Rosenberry, Appellant, *v.* Gillan Brothers et al.

Submitted December 13, 1937. Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Nathan Teitelman* and *Louis I. Gilgor,* for appellant.

*Harvey B. Lutz,* for appellees.

OPINION BY CUNNINGHAM, J., March 4, 1938:

The claimant in this workmen's compensation case has appealed from a judgment of the court below sustaining the exceptions of her employers and their insurance carrier to an award to her by the board of compensation for the permanent loss of the use of her left hand. The main ground for the judgment entered in favor of the defendants was that claimant at the time of her accidental injury was "engaged ...... in agriculture" and, therefore, nothing contained in our Workmen's Compensation Act of June 2, 1915, P. L. 736, applies to or affects her or her employers. See the exempting act of June 3, 1915, P. L. 777, 77 PS §24.

The only issue of fact raised before the compensation authorities was whether claimant had lost the use of her entire hand, or had only lost two fingers and the use of a third. It is not questioned by defendants that claimant's second and third fingers of her left hand have been amputated as the result of an accident which occurred in the course of her employment on September 11, 1933. If, however, she was then engaged in agriculture, the extent of her injuries is not a factor in the disposition of her claim.

The compensation authorities do not seem to have given that question the consideration it deserved; neither of the referees who conducted the various hear-

ings nor the board made specific findings one way or the other upon this pivotal issue. Their conclusion that claimant was not engaged in agriculture is evidenced, however, by their repeated findings that "both the claimant and defendants were bound by the provisions of Article III of the Workmen's Compensation Act of 1915 and amendments thereto." Moreover, the second and third findings of fact made by the first referee read: "2. That on September 11, 1933, and for some time prior thereto the defendants, Gillan Brothers, operated a commercial fruit farm, selling fruit wholesale, and also retail at stands along the Lincoln Highway near Saint Thomas, Penna. 3. That on September 11, 1933, and for some time prior thereto the claimant, Mrs. Walter Rosenberry, was employed by the defendants, retailing fruit from a road stand, for which she was paid fifteen cents an hour, averaging about $10.00 per week."

With these underlying findings of fact, adopted as they were by the board, upon the record, it became the duty of the court below, upon the appeal of the defendants to it, to review the compensation authorities' application of the law to the facts so found. The above quoted findings of fact were amply supported by competent and uncontroverted evidence and the question whether the board properly applied the law to them was purely a matter of law for disposition by the court below, subject to review here. [1]

We are in accord with that portion of the opinion of President Judge DAVISON of the court below in which he holds that the issue relative to the nature of claimant's employment is ruled against her by the case of *Bucher v. American Fruit Growers Co.*, 107 Pa. Su-

---

[1] *Callihan v. Montgomery*, 272 Pa. 56, 62, 115 A. 889; *Houlehan v. Pullman Co.*, 280 Pa. 402, 406, 124 A. 640; *Paulin v. Williams & Co.*, 122 Pa. Superior Ct. 462, 186 A. 415; *Hein v. Ludwig*, 118 Pa. Superior Ct. 152, 157, 179 A. 917.

perior Ct. 399, 163 A. 33, in which it was held that the term "agriculture," as used in the exempting statute, includes fruit growing—the cultivation of orchards, and the harvesting, marketing and shipping of fruit raised therein.

Gillan Brothers, claimant's employers, owned and operated several farms in Franklin County, a considerable portion of the acreage of each being devoted to the growing of peaches and other fruit. Claimant and her husband lived on one of these farms. A portion of the farm was devoted to the cultivation of ordinary agricultural products and the remainder to the raising and marketing of fruit. Claimant's husband was employed steadily upon the farm. As we understand the record, a roadside stand was operated, in connection with the tenant house occupied by claimant and her husband, from which fruit was sold during the marketing season. During the months the stand was in operation claimant was employed to sell fruit from it and was paid at the rate of fifteen cents an hour; as a part of her duties she frequently assisted purchasers in loading fruit upon trucks and in their automobiles. Claimant testified that practically all the fruit sold at retail from the farm upon which she lived was sold "off the fruit stand." She further stated that when her employers had men employed in threshing, or baling hay, she boarded them and was paid for such services.

During the course of her employment in selling fruit on September 11, 1933, she was assisting a customer in loading a basket of peaches in the rear of an automobile and suffered an accidental injury to her left hand when the lid of the rear compartment of the car fell upon and crushed her middle, ring, and little fingers.

We adopt the following excerpt from the opinion of the court below: "The question before us is whether this claimant when employed as above set out was en-

gaged in agriculture so as to be excluded from the protection of the compensation law. That she was employed by the defendants and paid a wage by them is not disputed, and that she was engaged in marketing their crop when injured we think can not successfully be contested. The fact that the crop had been harvested by others and delivered to the stand of the defendants to be sold by the claimant does not in any way affect the fact that she was marketing their product. That she was so marketing it from a stand owned and operated by the defendants on their land and she being hired to sell for them at that stand clearly connects her with the operation of agriculture. She was as much engaged in agriculture as was the claimant in *Bucher v. American Fruit Growers Company*, supra, and we can see no reason to distinguish this case from that one."

We would affirm the judgment in favor of the defendants without further comment if it were not for the fact that counsel for the claimant contend defendants by their conduct estopped themselves from questioning the jurisdiction of the compensation authorities to hear and determine their client's claim upon its merits. A review of the proceedings is essential to an understanding of the grounds for their contention and to its disposition.

As a result of the development of infection in claimant's fingers and the palm of her hand the middle finger was amputated November 15, 1933. Although her employers and their insurance carrier have contended throughout the litigation that claimant was engaged in agriculture at the time of the accident, the insurance carrier paid her, without any compensation agreement or proceedings under the Workmen's Compensation Act, the sum of $210., being the amount fixed by section 306(c) of that statute for the loss of a second finger—sixty-five percentum of wages ($7.00) during thirty weeks. We gather from the record that although

this payment was made as "compensation" for the loss of claimant's middle finger it was not made under a policy issued pursuant to section 305 of the statute, as amended, 77 PS §501, which requires every employer liable under the statute to pay compensation to insure himself against such liability unless exempted by reason of his own financial ability, but because the present insurance carrier had issued to the employers a so-called "voluntary compensation" policy covering personal injuries to their employees, even though their employees were engaged in domestic service or agriculture. The policy was not offered in evidence, as it should have been, but there seems to have been no controversy that its coverage was intended to and did extend to employees excluded from the benefits of our compensation statute.

On May 23, 1934, claimant, contending that her injuries were more extensive than the loss of her middle finger, filed her claim petition under our Workmen's Compensation Act. The defendants filed an answer averring that claimant was engaged in agriculture when injured and that the board, therefore, had no jurisdiction to entertain her petition. Reference was also made in the answer to the payment for the loss of the middle finger under the "voluntary coverage" of the insurance carrier's policy.

At the hearing before Referee Beringer on August 23, 1934, claimant, in addition to her own evidence, introduced the testimony of physicians to the effect that the use of her third finger for industrial purposes had also been permanently lost and that the condition of her hand would probably be improved by the amputation of her third finger.

One of the difficulties in the case grows out of the manner in which the referee treated and disposed of the case at this point. In view of the medical testimony, the insurance carrier offered to pay for the suggested

surgical operation for the removal of claimant's third finger. The referee found that claimant, in addition to the loss of her middle finger, had also lost the use of her third finger and awarded compensation at the rate of $7.00 a week for a total period of fifty weeks (adding the number of weeks specified in section 306 (c) for the loss of a third finger) to begin as of September 18, 1933, the seventh day after the accident, with credit to defendants for the sum of $210 theretofore paid for the loss of the middle finger, leaving $140 to be paid under his award together with medical, surgical, and hospital expenses. The award closes with this paragraph:

"The above award based on the understanding that claimant will submit herself to the operation offered by the defendant insurance carrier, which operation will include the amputation of the third finger of claimant's left hand, amputation of part of the remaining stump of the middle finger, and such other manipulations as will tend to make the remaining part of the hand useful."

The defendants appealed from the action of the referee to the board, excepting to the finding of loss of use of the third finger and again challenging the jurisdiction of the compensation authorities to entertain any proceedings at the instance of claimant.

On November 2, 1934, defendants sought and obtained leave to withdraw their appeal. No reasons were assigned, but, as the award contemplated a further surgical operation for which the insurance carrier had volunteered to pay and as the result would be the loss of two fingers, it is not difficult to see why it would be useless to prosecute the appeal from the portion of the award allowing compensation for fifty weeks.

At this point arises an issue which may as well be disposed of now. It is contended on behalf of claimant that, as the question of the nature of her employment

was also raised by the appeal, its abandonment rendered the holding of the referee that the compensation statute applied to this case res judicata and estopped defendants from thereafter challenging the jurisdiction of the compensation authorities. We do not so understand the law, especially in the light of the circumstances to which we have referred, and where, as here, the issue is jurisdiction over the subject-matter of the litigation rather than over the persons of the litigants. As a general proposition, jurisdiction over the subject-matter cannot be conferred by estoppel or even by agreement of the parties, particularly when the legislature has expressly withheld it from the administrative tribunal which seeks to exercise it: *Wettengel v. Robinson et al.*, 288 Pa. 362, 367, 136 A. 673; *Bluestone v. DeRoy et al.*, 298 Pa. 267, 148 A. 110. If claimant was engaged in agriculture, the board and its referees never had jurisdiction to entertain her claim petition. Such a lack of jurisdiction could be raised at any stage of the proceedings.

On November 26, 1934, claimant was paid the $140, awarded as additional compensation for the loss of the use of her third finger, and signed a final receipt, reciting the previous payment of $210 for her second finger and containing the statement that she was "able to return to work September 2, 1934, without any reduction in wages due to "her injury." This payment, like the former, was made by the insurance carrier under the "voluntary" policy issued by it to her employers.

On March 4, 1935, claimant submitted to the suggested operation and her third finger was amputated.

In an effort to secure additional compensation, claimant filed with the board on March 26, 1935, a petition entitled "Petition to Set Aside Final Receipt." It specifically prayed that the receipt be set aside under the provisions of section 434 of the Act of June 26,

1919, P. L. 642, 77 PS §1001, but contained no aver-
ments of fraud, coercion, improper conduct, or mistake
of law or fact. In substance, it was a petition for the
modification of the award of September 22, 1934, upon
the ground that claimant's disability had increased
from the loss of two fingers to the permanent loss of
the use of her entire hand for industrial purposes.
Under the facts set out in the petition it should have
been filed under the second paragraph of section 413,
as amended, 77 PS §772.

The filing of this petition and the manner in which
it was disposed of by the referee, board and court below
has given rise to considerable unnecessary confusion.
Defendants, in their answer, objected to its considera-
tion because the award to which it applied was "for
a definite period" and the petition was not filed during
the fifty weeks specified therein. They also again
averred the board had no jurisdiction to entertain the
petition because claimant had been injured while en-
gaged in agriculture.

The petition was referred to another referee who took
testimony, both lay and medical. This referee ignored
the objection that the petition had been filed too late
and found, upon its merits, that claimant's little finger
had become stiff and industrially useless, but the use
of the hand had not been lost. He accordingly awarded
additional compensation at $7.00 per week for fifteen
weeks for the loss of the use of claimant's little finger.
Both sides appealed to the board. The board held the
petition had not been filed within the time prescribed
by section 413 but undertook to treat it as a petition
for a rehearing under section 426, as amended, 77 PS
§871. Upon a review of the testimony before the referee
and an examination of claimant's hand, the board re-
versed the findings and award of the referee, substi-
tuted its own to the effect that the use of the hand
had been permanently lost, set aside the final receipt,

and awarded compensation at $7.00 per week for one hundred and seventy-five weeks, subject to credit for the amounts theretofore paid. As the testimony with respect to the condition of claimant's hand was conflicting, this award could not be disturbed if the board had jurisdiction to make it.

Upon appeal by defendants to the common pleas, it was correctly held that the board had exceeded its powers in treating the petition as one for a rehearing. We have frequently said that where a petition sets forth legal ground for relief it may be considered under the appropriate section of the statute, regardless of the section number mentioned in the petition; but the relief must be consistent with the averments of the petition and warranted by the evidence. Here the board undertook to set aside a final receipt without either averment or proof of any of the grounds specifically prescribed by the legislature as a basis for such action.

But we do not agree with the further conclusion of the common pleas that the claimant was not entitled to have her petition considered under the second paragraph of section 413 as a petition for modification of the award of the first referee upon the ground of an increase in disability. When relief is granted upon that ground any final receipt given by a claimant necessarily and automatically disappears from the case; it merely fixes "the date of the last payment of compensation" from which the limitation of one year therein prescribed is to be calculated.

It is true the petition was not filed within the definite period of fifty weeks during which the award ran under section 306(c). But we here have a most unusual and apparently a novel situation. Under the award, as made by the referee, the "definite period" contemplated by the statute had *"run"* before the award was made. Its date was September 22, 1934, and the applicable portion thereof reads: "Compensation at the rate of

$7.00 per week is accordingly awarded the claimant, to begin as of September 18, 1933, [the seventh day after the accident] and continue for a period of fifty weeks" etc. The period of fifty weeks from September 18, 1933, expired on September 2, 1934,—twenty days before the award was made.

No argument is needed to demonstrate that the legislature did not have such a situation in contemplation when it provided that, except in eye injuries, "an award can only be......modified......during the time such......award has to run,......if for a definite period." The situation here existing distinguishes this case from the comparable one of *Ernst v. Sassaman*, 117 Pa. Superior Ct. 353, 178 A. 317, relied upon below. In that case the award had some six weeks to run from and after its date. Another exception to the general rule will be found in *Kitchen v. Miller Bros. Co. et al.*, 115 Pa. Superior Ct. 141, 174 A. 919.

The other limitation in the second paragraph of section 413 is one year from the last payment of compensation. Here the last payment was made on November 26, 1934, and the petition was filed March 26, 1935.

As the court below sustained the defendants' exceptions to the award by the board of compensation for the loss of the use of claimant's hand and entered judgment in their favor primarily upon the ground that she was engaged in agriculture when injured, the matters we have just discussed are of secondary importance.

If the claimant has in fact lost the use of her left hand for industrial purposes and, although engaged in agriculture, is entitled to damages in addition to those already paid her by the insurance carrier under the "voluntary" policy it issued to her employers, she must seek recovery under the provisions of that policy. She was not legally entitled to file or prosecute any claim under the provisions of our Workmen's Compensation

Act; the compensation authorities had no jurisdiction in this case.

Judgment affirmed.