Hardy *v.* Gapen et al., Appellants.

Argued April 11, 1940.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes, and Hirt, JJ.

*Samuel G. Wagner,* of *Wagner & Wagner,* with him *George Y. Meyer* and *J. E. Isherwood,* for appellants.

*Patrick D. Reinhart,* for appellee.

Opinion by Cunningham, J., July 19, 1940:

The claimant in this workmen's compensation case, a boy sixteen years of age, sustained severe injuries on October 31, 1936, to his right forearm, while in the course of his employment with the individual defendants, through being accidentally jolted to the ground from an empty hay wagon. At the time of the accident a tractor was hauling the wagon across a meadow, preparatory to transporting a load of hay to a barn.

The underlying question in the case is whether claimant when injured was so "engaged in . . . . . . agriculture", within the intendment of the Act of June 3, 1915, P. L. 777, 77 PS Sec. 24, as to exclude him from the application and benefits of our Workmen's Compensation Act of June 2, 1915, P. L. 736, and its amendments. If he was, the subsidiary controverted issues, relative to his actual wages and whether his employment was such a violation of the Child Labor Law of May 13, 1915, P. L. 286, as amended July 19, 1935, P. L. 1335, 43 PS Sec. 49, as would entitle him to double compensation from the individual defendants (under Section 320 of the Workmen's Compensation Act, added by the Act of April 14, 1931, P. L. 36, 77 PS Sec. 672), disappear from the case. If claimant was engaged in "agriculture", there would be no primary obligation either upon his employers or their intervening insurance carrier, Great American Indemnity Company, to pay any compensation. Moreover, the first section of the Child Labor Law, supra, expressly excludes "children employed on the farm" from the application of that statute.

We, accordingly, address ourselves to a consideration of the primary question. After various hearings, which need not be detailed, the compensation authorities concluded, generally, that because the farm work in which claimant was engaged when injured was merely incidental to the operation of a dairy he was not engaged in agriculture; and further, that, as he was under eighteen years of age and had been employed without

an "employment certificate", the individual defendants were liable to him for the "additional compensation" specified in the above cited Section 320 of the statute.

As to the extent of claimant's injury, they found it had resolved itself into the permanent loss of the use of his right arm, entitling him to an award under Section 306 (c), 77 PS Sec. 513, for a period of 215 weeks. It is contended on behalf of defendants that the injury amounted only to the loss of the use of claimant's hand and that the period should, in no event, exceed 175 weeks. There was medical testimony that claimant's arm is as useless as it would be if amputated at the elbow. The statute provides that amputation at or above the elbow shall be considered as the loss of an arm; there is therefore no merit in their contention. The referee and board also found claimant's wages were $7 per week. Based upon these findings, the following award was made:

"Your referee accordingly awards to Herbert Hardy, claimant, and against F. M. Gapen and H. C. Gapen, partners, trading as Valley View Dairy and the Great American Indemnity Company, defendants, compensation at the rate of $7 per week, beginning November 7, 1936, and continuing for a period of 215 weeks.

"Additional compensation is awarded to Herbert Hardy, claimant, and against F. M. Gapen and H. C. Gapen, partners, trading as Valley View Dairy, defendants, in the sum of $1,505 which said sum is to be deposited to such savings bank or trust company as may be approved by the Board in accordance with paragraph (c) of Section 320 of the Act."

The court below dismissed the appeal of the employers and their insurance carrier from the action of the board and entered judgment on the award for $3010, but neglected to name the insurance carrier as liable for one half thereof.

The present appeal is by the employers and their insurance carrier from the judgment entered below,

and the question of law involved under it is whether the compensation authorities and court below have properly applied the law to the uncontroverted facts appearing from the record and to the findings of the referee and board where there were conflicts in the evidence.

Our consideration of this record has convinced us that the judgment must be reversed because the law has been misapplied to the facts of this case.

Surely our legislature never intended to declare that every farmer who decides to transform the grain, grass and hay raised upon his farm into wool, eggs or milk by feeding these crops to his sheep, chickens or cattle, and selling the resulting commodities at wholesale or retail, has abandoned agriculture and entered upon an industrial business. The findings by the referee and board that claimant's employers "were engaged in the dairy business" and that he "assisted them in the delivery of the milk which they bottled at their farm and which they sold at wholesale and retail to various people in their community" are by no means conclusive of his right to compensation.

It may be possible, in these days of certified dairies, etc., that the production and processing of milk might be carried on upon such a scale and under such circumstances that it would cease to be agriculture and become a purely industrial or commercial enterprise. Ordinarily, however, and in its broader sense, "agriculture" includes "farming, horticulture, forestry, dairying, sugar making, etc." Webster's New International Dictionary (2d ed.). Each case must therefore be decided upon its own facts.

Material facts appearing from this record may be thus summarized:

The employers' farm contained about 600 acres; they owned part of it and leased the remainder; on it they raised the usual crops and live stock. About 100 acres were in corn, 35 to 40 in wheat, 20 to 30 in oats, 150

to 200 in meadow land, and the remainder in pasture and woodland. On their farm were the usual farm buildings, including two barns and a garage. The dairy farm proper contained 68 acres, and the milk from about thirty-five cows was sold as raw milk under a license from the Milk Control Board—no preparation, except bottling, being required. Practically all the crops raised were consumed on the farm.

The evidence is conflicting with respect to the terms of claimant's employment and the number of days he had worked prior to the date of his injury. His version was that he was employed to work on the truck in the forenoon, assisting in delivering milk, and in the fields in the afternoon, "getting stuff for the cows." Claimant asserted he was employed in the latter part of August, 1936, worked every day in September and thirty days in October. His testimony relative to the regularity of his employment is contradictory and unreliable. The payrolls indicate he worked only two days in August, three in September and five in October. H. C. Gapen, who employed claimant, testified he was employed to do farm work, taking in hay and general work, and that claimant never worked on the milk delivery truck. As neither point is, in our opinion, material, we need not consider the sufficiency of the evidence to sustain the findings of the board with regard to claimant's weekly wage or the extent of his duties. On the whole, the evidence in this case shows that these employers were carrying on a dairy business in the way many farmers throughout our state have engaged, incidentally or exclusively, in that branch of agriculture.

We think the disposition of this case is controlled in principle by *Bucher v. American Fruit Growers Co.*, 107 Pa. Superior Ct. 399, 163 A. 33, where a truck driver was injured while returning from a railroad station after delivering a load of barrelled apples from a fruit-grower's farm; and *Rosenberry v. Gillan Bros.*, 130 Pa. Superior Ct. 469, 197 A. 523, a case in which

the claimant was injured while selling fruit, grown upon a commercial fruit farm, from a roadside stand. In both cases it was held the employee was engaged in agriculture.

While none of the cases considered by this court has involved the dairy business, a well considered opinion by the Common Pleas of Cumberland County will be found in *Lautsbaugh v. Seavers,* 24 D. & C. 101, in which it was said:

"The maintenance of a dairy and production of milk on the defendant's own farm as an incident of ordinary farming was an agricultural pursuit: *Beyer v. Decker et al.,* 159 Md. 289, 150 Atl. 804. Similarly, the hauling of milk from the defendant's farm to the shipping point is an agricultural pursuit and an important incident of the defendant's business of farming: *Bucher v. American Fruit Growers Co.,* 107 Pa. Superior Ct. 399."

For cases from other jurisdictions in which it has been held that an employee on a dairy farm is engaged in agriculture, see *Greischar v. St. Mary's College,* 176 Minn. 100; and *Keeney v. Bcasman,* 169 Md. 582, in which the facts were quite similar to those here present.

This is a hard case and sympathy for the unfortunate plight of this young claimant naturally inclined the various tribunals charged with the administration of the statutes involved to a construction favorable to him. We, however, cannot escape the conviction that the compensation authorities and court below have misinterpreted the intention of the legislature as disclosed in the exempting statute.

Judgment reversed and here entered for the defendants.