[No. 28958.   Department One.   May 14, 1943.]

THE STATE OF WASHINGTON, *Respondent,* v. CORA BELLE CHRISTENSEN, *as Executrix, Appellant.*

*In the Matter of the Appeals of* HANSEN BROTHERS DAIRY *et al., Appellants,* v. E. B. RILEY, *as Commissioner of Unemployment Compensation, Respondent and Cross-appellant.*[1]

[1]Reported in 137 P. (2d) 512.

*Joseph Matsen* and *John P. Matsen,* for appellants.

*The Attorney General, Fred E. Lewis, Rudolph Naccarato, George W. Wilkins,* and *Frank W. Foley, Assistants,* for respondents and cross-appellant.

JEFFERS, J.—Four cases are involved in this appeal. Due to the fact that the principal question raised in all the cases is whether or not certain men employed as milk truck drivers and milkhouse men by the following dairy farms: Richmond Highlands Dairy Farm, Hansen Brothers Dairy, Smithers Farm Dairy, and Riverview Farm, are "agricultural laborers," as that term is defined in Rem. Supp. 1941, § 9998-119g (6) (i), it was stipulated that the four cases might be consolidated for the purpose of this appeal, and accord-

ingly an order was entered in this court so consolidating them.

These cases originated in the following manner: The commissioner of unemployment compensation and placement (who will hereinafter be referred to as the commissioner) served upon Hansen Brothers Dairy, Smithers Farm Dairy, and Riverview Farm, an order and notice of assessment, under the provisions of Rem. Supp. 1941, § 9998-114c, for claimed delinquent contributions under the unemployment compensation act, in the respective amounts of $25.65, $71.28, and $128, for the period from July 1 to December 31, 1941.

Each of the dairies, pursuant to the provisions of Rem. Supp. 1941, § 9998-114e, filed with the commissioner a petition in which it was claimed that the assessments levied against them were made without legal authority, principally because they are based upon services which are exempt as agricultural labor.

The three cases came on for hearing before an appeal examiner, who had been duly assigned by the commissioner to hear the cases. Each of the petitioners was represented by John P. and Joseph Matsen, and the commissioner by John Lindberg. After the hearing, at which witnesses were sworn and testified, the appeal examiner made and entered findings of fact, conclusions, and a decision, holding that the assessments levied were proper, as the services performed by the milk truck drivers and milkhouse men could not be classed as agricultural labor, under § 9998-119g (6) (i), *supra*.

The theory of the examiner is shown by the following quotation taken from his conclusions:

"As will be noted from a reading of section 19 (g) (6) (i), *supra*, petitioners cannot prevail in their contention that the services in question constituted 'agricultural labor' unless it can be said that 'such service is performed as an incident to ordinary farming operations.' In our opinion, the work performed in connec-

tion with the pasteurizing and bottling of milk and the delivering and selling of milk and other products at wholesale and retail is distinctly commercial in nature and not incidental to 'ordinary farming operations.' "

A petition was then filed, in which apparently the three cases were consolidated, asking that the commissioner review the proceedings had before the appeal tribunal. This the commissioner did, and on July 22, 1942, made and entered an order affirming the decision of the appeal tribunal. Notice of appeal from the order of the commissioner to the superior court for King county was timely filed in the three consolidated cases.

The following stipulation relating to the three consolidated cases was filed in the superior court:

"Now, THEREFORE, IT IS HEREBY AGREED between the parties hereto that the assessments in controversy shall be and hereby are adjusted as follows:

"As to Hansen Brothers Dairy the assessment shall be and is reduced in the sum of Nine and 50/100 ($9.50) Dollars.

"As to Smithers Farm Dairy the assessment shall be and is reduced in the sum of Fifteen and 66/100 ($15.66) Dollars.

"As to Riverview Farm the assessment shall be and is increased in the sum of Six and 75/100 ($6.75) Dollars.

"The foregoing adjustments of assessments are without prejudice to any of the parties hereto as to the principal question of liability or non-liability of the appellants in any amount and without prejudice as to any question relative to attorneys' fees."

Further reference to this stipulation will be made later.

The trial court, after a review of the record as made before the appeal tribunal and affirmed by the commissioner, on November 16, 1942, entered judgment affirming the order of the commissioner. By its judgment, the trial court further decreed that, by reason of the stipulation hereinbefore referred to, counsel for appellants be allowed, as attorney's fees, for their

services rendered as attorneys for Hansen Brothers Dairy, the sum of twenty-five dollars, to be paid out of the unemployment compensation administration fund in accordance with Rem. Supp. 1941, § 9998-106i, and the sum of twenty-five dollars for their services rendered as attorneys for Smithers Farm Dairy. The court also decreed that, under the provisions of subsection 106i, *supra,* a reasonable attorney's fee to be charged against appellants by their attorneys is the sum of $66.66, in each of the three cases. An appeal to this court was timely taken from the judgment of the trial court.

Richmond Highlands Dairy Farm, owned and operated by Sam Christensen prior to his death, and since that time by his widow, Cora Belle Christensen, who was duly appointed executrix of his estate, had been assessed on the basis of wages paid its milk truck drivers, in the sum of $59.29 for the third quarter of 1941, and $4.43 up to the time of Mr. Christensen's death in the fourth quarter, or a total of $63.70. After Mr. Christensen's death, the commissioner caused a claim for the above amount to be filed in the estate, which claim was rejected by the executrix, and an action was then brought in the superior court for King county, in the name of the state of Washington, against the executrix, to collect this sum.

By her answer, the executrix raised the questions of the right of the commissioner to levy an assessment based on the salaries paid truck drivers, and the right of the state to institute a civil action to collect such assessment. By her cross-complaint, the executrix also asked for the return of the sum of $73.04, inadvertently paid to the commissioner.

The only class of laborers involved in the Christensen case is milk truck drivers.

The trial court in this case, after a hearing, granted judgment in favor of the state for the sum of $59.29,

together with interest from February 11, 1942, and costs. The court found that, due to the fact that the assessment made by the commissioner covered the period up to October 5, 1941, the date of Mr. Christensen's death, and the amount paid the commissioner, $73.04, purported to cover the period from October 1 to December 31, 1941, there was an overlapping of five days, and that the executrix was entitled to a credit of $4.43 for this time. With this exception, the cross-complaint was dismissed. The judgment does not fix any fee to be paid attorneys for the executrix, either from the estate or the unemployment compensation administration fund.

Defendant executrix has appealed from the judgment entered, and, as heretofore stated, this case was consolidated with the three other cases for the purpose of this appeal. The commissioner has cross-appealed from that portion of the judgment entered in the first three cases referred to, which awarded to counsel for the dairies the sum of twenty-five dollars in the Hansen Brothers Dairy case, and twenty-five dollars in Smithers Farm Dairy case, such sums to be paid from the unemployment compensation administration fund.

Errors assigned in the Christensen case are failure to dismiss respondent's complaint for lack of jurisdiction; failure to determine that the services of the milk truck drivers constituted "agricultural labor"; failure to adjudge appellant entitled to a refund of $73.04 out of the unemployment compensation administration fund; failure to fix, as between attorney and client, a reasonable fee for appellant's attorney; and failure to determine that the question of what constitutes "agricultural labor," upon the record herein, is a Federal question.

In the case of the other three dairies, which came up through the department, and was heard by a judge other than the judge who heard the Christensen case, appellants assign error on the part of the trial court

in holding the commissioner was authorized to make and levy the assessments against the dairies for alleged unemployment contributions; in holding that milk truck drivers and milkhouse men are not included within the statutory "agricultural labor" exemption; in failing to fix and allow adequate attorneys' fees and make them payable from the administration fund.

The controlling facts are much the same in all four of these cases. The testimony as to the method of operation all came from the respective owners of the dairies, so we have no dispute as to the facts.

All of these appellants operate dairy farms in King county. Some of the land is leased, and some of it is owned by appellants. The land is used to produce feed for the cows. All of the dairies own equipment consisting of the usual farm implements, the necessary dairy equipment, which in at least two of the cases includes a complete pasteurizing plant. They all own trucks, which are kept on the farms and are used in delivering milk to market, by delivery to consumers on regular milk routes and to restaurants and grocery stores. The sale to others than those on the milk routes is referred to as a wholesale operation, and the sale to the customers on the milk routes as at retail. All of the dairies have milk truck drivers, who work from eight to ten hours on the trucks. They come to the farm in the morning, help load the trucks, and then distribute the milk on the routes, after which they return to the farm. Aside from keeping their trucks in condition, these men do no other work in or around the farm. In addition to selling and distributing the milk produced on the farms, the milk truck drivers, as an accommodation to their customers, sell and distribute other dairy products, consisting of cream, cheese, butter, and buttermilk. These dairy products other than milk are purchased by the dairies from other concerns, and are resold at a small profit to the regular milk customers. The testimony is to the effect that

it is necessary to handle dairy products other than milk in order to hold their milk customers and to meet the competition of other dairies. These dairies all have investments of from twenty-five to thirty-five thousand dollars.

The Christensen dairy has five milk routes, and all of the milk sold, both raw and pasteurized, is produced and bottled on the farm. This dairy has its own pasteurizing plant, and this process is conducted on the farm by men in the milkhouse. It appears from the testimony that the purpose of pasteurizing is to remove certain impurities from the milk, but that, after this process, the milk is in the same form as before, and is used for the same purpose as raw milk.

It further appears that only a small proportion of the truck driver's time is taken up in the distribution of dairy products other than milk, as they are delivered at the same time and along with the milk.

It is admitted that a dairy farm is agricultural in nature, and it is not contended by respondent that any of the employees of these dairies, except the milk truck drivers and milkhouse men, are in "employment," under the act.

It further appears that, in the locality where these dairies are located, most of the large dairies dispose of their milk by the method of milk routes. We are of the opinion that the testimony also shows that this is the only available way for the large dairies to dispose of their milk. It appears without contradiction that about ninety per cent of the profit from the milk routes is from the sale of milk produced on the farms.

In the Christensen case, the testimony shows that the sum of $73.04 was inadvertently paid by a son of the executrix, but that she at all times has denied the right of the commissioner to make an assessment based upon the wages paid to the milk truck drivers.

All of these dairy farms have been in operation for many years. Hansen Brothers Dairy sells both raw and pasteurized milk on its milk routes. About forty

per cent of the milk is sold raw, and sixty per cent pasteurized. The milk is pasteurized on the farm, and this dairy has two milkhouse men who do the pasteurizing and take care of all the milk. Mr. Hansen testified that about ninety per cent of the dairy's profit was from the sale of milk produced on the farm; that he considered all of this work a part of the ordinary farm operation. Seventy per cent of the milk sold by Smithers Farm Dairy is sold as raw milk, and thirty per cent as pasteurized. This dairy has no pasteurizing plant. The milk to be pasteurized is picked up by the Charmed Lands Dairy, taken to its plant, pasteurized, and returned to the Smithers Farm Dairy. It is then sent out on the routes.

We might say here that all of these milk truck drivers are paid a straight salary, and have no interest in the trucks other than as drivers. It also appears that all the dairies have milkers and general farm hands.

Riverview Farm is owned and operated by Jacob Nielsen. The greater part of his milk is sold direct to homes. This dairy has no pasteurizing plant, and purchases its pasteurized milk from Charmed Lands Dairy. Seventy-five per cent of the milk sold is produced on the farm and sold as raw milk. Twenty-five per cent of the milk sold is pasteurized.

None of these appellants, according to their testimony, is engaged in any occupation other than dairy farming, and they all testified that the distribution and sale of their milk on the milk routes is a part of their farm operation.

It is the main contention of appellants that their milk truck drivers and milkhouse men are agricultural laborers, as that term is defined by Rem. Supp. 1941, § 9998-119g (6) (i). On the other hand, respondent contends that, as conducted by these dairies, the operation of the milk routes and the work of the milkhouse men in the Hansen Brothers Dairy case are commercial activities, that these operations are not incidental to ordinary

dairy farm work, and that therefore these particular employees do not come within the exemption accorded to agricultural laborers under the unemployment compensation act. It is also contended in the Christensen case that the fact that the milk routes were inventoried and appraised separately indicates that they were considered as a separate operation.

At the outset, it might be well to have before us the different provisions of the particular statute applicable herein, as originally enacted and as amended by the 1939 and 1941 legislatures. The unemployment compensation act will be found in chapter 162, p. 574, Laws of 1937. Section 19 (g) (1) of the act defines employment as follows:

" 'Employment,' subject to the other provisions in this subsection, means service, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied."

Subsection (g) (6), of § 19, *supra,* provides: "The term 'employment' shall not include: (i) Agricultural labor; . . ." (The statute gives no definition of agricultural labor.)

The legislature in 1939, by chapter 214, p. 853, § 16, amended certain parts of § 19, chapter 162, Laws of 1937. The governor, however, vetoed parts of the 1939 act, and among the portions vetoed was the section number, so that in fact we have no § 16. It has been referred to as that section of chapter 214, Laws of 1939, passed by both houses as § 16, and will be referred to in this opinion as unnumbered § 16, chapter 214, Laws of 1939. By this unnumbered section, the definition of employment, as given in the 1937 act, was not changed, but subsection (g) (6), of § 19, chapter 162, p. 612, Laws of 1937, was amended to read as follows:

"The term 'employment' shall not include:
"(i) Agricultural labor; (services customarily performed by a farm hand on a farm for the owner or tenant of a farm)."

On August 10, 1939, Congress amended the Federal social security act to be effective as of January 1, 1940. By this amendment (53 Stat. 1392, 26 U. S. C. A. § 1607), § 1607 of the internal revenue code was amended to read as follows:

"(1) AGRICULTURAL LABOR.—The term 'agricultural labor' includes all service performed—

"(1) On a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding, caring for, training, and management of livestock, bees, poultry, and fur-bearing animals and wildlife.

"(2) In the employ of the owner or tenant or other operator of a farm, in connection with the *operation, management, conservation, improvement, or maintenance of such farm and its tools and equipment,* or in salvaging timber or clearing land of brush and other debris left by a hurricane, if the major part of such service is performed on a farm.

"(3) In connection with the production or harvesting of maple sirup or maple sugar or any commodity defined as an agricultural commodity in section 15 (g) of the Agricultural Marketing Act, as amended, or in connection with the raising or harvesting of mushrooms, or in connection with the hatching of poultry, or in connection with the ginning of cotton, or in connection with the operation or maintenance of ditches, canals, reservoirs, or waterways used exclusively for supplying and storing water for farming purposes.

"(4) *In handling,* planting, drying, packing, packaging, processing, freezing, grading, storing, *or delivering to storage or to market or to a carrier for transportation to market,* any agricultural or horticultural commodity; *but only if such servi*ce *is performed as an incident to ordinary farming operations* or, in the case of fruits and vegetables, as an incident to the preparation of such fruits or vegetables for market. The provisions of this paragraph shall not be deemed to be applicable with respect to service performed in connection with commercial canning or commercial freezing or in connection with any agricultural or horticultural commodity after its delivery to a terminal market for distribution for consumption.

"As used in this subsection, the term 'farm' includes stock, dairy, poultry, fruit, fur-bearing animal, and truck farms, plantations, ranches, nurseries, ranges, greenhouses or other similar structures used primarily for the raising of agricultural or horticultural commodities, and orchards." (Italics ours.)

The legislature, in 1941, by § 14, chapter 253, p. 920, amended § 19 (g) (6) (i), chapter 162, p. 612, Laws of 1937, as amended by unnumbered § 16, of chapter 214, Laws of 1939, to read as follows:

"(6) The term 'employment' shall not include:

"(i) Agricultural Labor—the term 'Agricultural Labor' includes all services performed:

"(1) On a farm, in the employ of any person, in connection with the cultivating of the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, including raising, shearing, feeding, caring for, training, and management of livestock, bees, poultry, and fur-bearing animals and wild life, or in the employ of the owner or tenant or other operator of a farm, in connection with the *operation,* management, conservation, improvement, or maintenance of such farm and its *tools and equipment.*

"(2) *In handling,* planting, packing, packaging, grading, storing, *or delivering to storage or to market or to a carrier for transportation to market,* any agricultural or horticultural commodity; *but only if such service is performed as an incident to ordinary farming operations* or, in the case of fruits and vegetables, in their raw and natural state, as an incident to the preparation of such fruits and vegetables for market. The provisions of this paragraph shall not be deemed to be applicable with respect to services performed in connection with commercial canning or commercial freezing or in connection with any agricultural or horticultural commodity after its delivery to a terminal market for distribution or consumption." (Italics ours.)

As indicated by our reference thereto in the first part of this opinion, the 1941 amendment of the term "agricultural labor" is referred to in Rem. Supp. 1941 as § 9998-119g (6) (i).

While the 1939 Federal amendment above referred to contains some language not found in our 1941 amendment, it is quite evident, from a reading of the two acts, that our 1941 definition of the term "agricultural labor" was generally patterned after the Federal amendment.

While it was held in the case of *Fosgate Co. v. United States,* 125 F. (2d) 775, that the 1939 amendment was not intended as a clarification of the old law, and that the meaning of agricultural labor, as defined therein, could not be applied to cases arising prior to the effective date of the amendment, and while we also held, in *Cowiche Growers, Inc. v. Bates,* 10 Wn. (2d) 585, 117 P. (2d) 624, that the 1941 amendment could not be considered as interpretative or explanatory of either the 1937 or the 1939 act, we also stated in the last cited case that the 1941 amendment was enacted because of conditions called to the attention of the legislature, which it did not have in mind at the time the former acts were passed. It clearly appears from a reading of the *Cowiche Growers* case that we appreciated that the 1941 amendment broadened the scope of the term "agricultural labor," as used in the 1937 and 1939 acts, but that the 1941 act was not available to appellants in the cited case.

We recognize the rule that exceptions, generally, should be strictly, but reasonably, construed; that they extend only so far as their language warrants; and all doubts should be resolved in favor of the general provision, rather than the exception.

We are firmly convinced that it was the intent of the legislature, by the 1941 amendment, to broaden the scope of the term "agricultural labor," and we have before us the question of whether or not the milk truck drivers of all these dairies, and the milkhouse men in the Hansen Brothers Dairy case, are agricultural laborers, within the meaning of that term as defined in the 1941 amendment.

Before discussing the legal aspect of this case, we

also desire to say that we do not wish to be understood as intimating that, in the cases to which we may hereinafter refer, the statutes or regulations referred to are identical with our 1941 amendment, in so far as they attempt to define the term "agricultural labor," or like terms. We believe, however, that the cases are of some assistance, in that they indicate some of the operations the courts have determined to be agricultural in nature, and some of the factors which can be considered in determining whether or not certain services can be considered as agricultural labor, under the exemption features of the various acts. We frankly admit that we have been cited to no case, and we have found none, where the services claimed as exempt were performed as part of an operation which involved all the factors present in the instant cases.

There seems to be considerable confusion in the decisions concerning the interpretation of the term "agricultural labor," or like terms, as used in the exemption clauses of unemployment compensation, fair labor standards, workmen's compensation, and taxation acts. It seems to us that some of the confusion has arisen in attempting to apply certain features found to be the determining factor in somes cases as the criteria in other situations, instead of looking more to the main purpose of the operation.

For example, in the Arizona case of *Wayland v. Kleck,* 57 Ariz. 135, 112 P. (2d) 207, wherein an action was brought by Kleck against the unemployment compensation commission to recover contributions paid to the commission, Kleck contended that he and his employees were engaged in agriculture, and therefore were not liable for such contributions. During the time for which the plaintiff was assessed, he and his employees did work for various farmers throughout the state, clearing, grubbing, levelling, ditching, plowing, discing, dragging, bordering, and generally preparing lands for, and only for, the planting of agricultural

crops; dragging, sowing, broadcasting, and planting on such lands, for, and only for, the purpose of growing agricultural crops; digging tanks, reservoirs, and catch basins, and placing, forming, and fashioning earthern dams for, and only for, the purpose of impounding water to be used for watering livestock; operating mechanical agricultural implements and farm machinery; repairing and servicing such agricultural implements and machinery in the field as well as in a shop on the ranch; operating trucks for, and only for, the purpose of transporting fuel oil, lubricants, and repair parts for the servicing of such machinery; maintaining a central office and keeping books of account in respect to such employees, their occupation, and work performed.

The Arizona unemployment compensation law did not define agricultural labor. However, the commission had promulgated a regulation giving its definition to the term. Subdivisions 1 and 2 of that regulation correspond, in the subject treated, to §§ 1, 2, and 4, of the 1939 Federal amendment, and also to our 1941 amendment. The court, among other things, stated:

"What he [plaintiff] was doing was not commercial, for *he sold nothing.* It was not manufacturing, for he made no article out of the raw materials taken from or grown on the farm." (Italics ours.)

It seems to us the decision might well have been rested on the broad ground that the services performed constituted agricultural labor, under the act, or at least that they were incidental to ordinary farm operations.

The cited case shows the trend of the courts to give a broad interpretation to the meaning of the term "agricultural labor" to meet actual existing conditions. The court quoted from *United States v. Turner Turpentine Co.,* 111 F. (2d) 400, as follows:

" 'It is now a settled principle of statutory construction that Congress or a legislature in legislating *with regard to an industry or activity, must be regarded as having had in mind the actual conditions to which the*

*act will apply, that is, the needs and usages of such activity. When then, Congress in passing an act like the Social Security Act, uses, in laying down a broad general policy of exclusion, a term of as general import as "agricultural labor," it must be considered that it used the term in a sense and intended it to have a meaning wide enough and broad enough to cover and embrace agricultural labor of any and every kind, as that term is understood in the various sections of the United States where the act operates.' "* (Italics ours.)

The same services referred to in the above cited case were considered by the circuit court of appeals, ninth circuit, Judge Garrecht writing the opinion, in *Stuart v. Kleck,* 129 F. (2d) 400. The government contended that the services of the employees could not be considered agricultural labor, because they were performed in a commercial, and not an agricultural, enterprise, and that the laborers were not in the employ of the *owner or tenant* of the lands on which the services were performed. The court quoted from Webster's New International Dictionary, second edition, defining "agriculture" as follows:

" 'The art or science of cultivating the ground, and raising and harvesting crops, often including also feeding, breeding, and management of livestock; tillage; husbandry; farming; in a broader sense, the science and art of the production of plants and animals useful to man, including to a variable extent the preparation of these products for man's use *and their disposal by marketing or otherwise.* In this broad use it includes farming, horticulture, forestry, dairying, sugar making, etc.' " (Italics ours.)

The court held the services constituted agricultural labor. The court also stated that neither that case nor any expression in the case of *Fosgate Co. v. United States,* 125 F. (2d) 775, conflicts with the opinion in *North Whittier Heights Ass'n v. National Labor Relations Board,* 109 F. (2d) 76.

In the case of *Cassady v. Hiatt & Lee,* 150 Fla. 721, 8 So. (2d) 661, decided June 12, 1942, Hiatt & Lee sought

to enjoin the sheriff from collecting unemployment contributions for the years 1939 and 1940, under the Florida unemployment compensation law. The question involved was whether the term "agricultural labor," as used in the Florida law prior to June 1, 1941, included the services of the employees of appellee, who were engaged in performing services in connection with the cultivation of soil and production of crops *on groves not owned or leased by their employer*. The court, in holding the services performed constituted agricultural labor under the act, quoted from *Fosgate Co. v. United States, supra*: "The labor was done *in cultivating the soil*." (Italics ours.) Here again it will be noticed the court picked out one phase of the operation, as the apparent basis of its decision.

It seems to us it must be conceded that one of the main purposes of all farm operations is the sale of commodities produced on the farm. Many of the operations which formerly were performed by the farmer himself on the farm are now done for him by commercial agencies, away from the farm, and, when that occurs, the operation, although formerly a part of farming activities, sometimes becomes industrial in nature and is so recognized by the courts.

We have held that cooperative associations are non-agricultural primarily because the services rendered by employees of those organizations are performed away from, and completely divorced from, the operation of the farm where the produce is grown. *Cowiche Growers, Inc. v. Bates, supra*. We might here call attention to the fact that in the *Cowiche Growers* case we did not agree with those cases which hold that the *nature of the work done* should alone be the test of whether or not one engaged in such work is an agricultural laborer, but we quoted with approval from the case of *North Whittier Heights Ass'n v. National Labor Relations Board*, 109 F. (2d) 76, wherein the court said:

" 'Petitioner maintains that the nature of the work is the true test. Perhaps it would more nearly conform to the true test to say that the nature of the work modified by the custom of doing it determines whether the worker is or is not an agricultural laborer.' "

The courts, as hereinbefore mentioned, have had difficulty with this type of case, and some of this difficulty, as above stated, has, in our opinion, arisen because the courts have attempted to pick out some particular phase of the operation as determinative of whether it was agricultural, industrial, or commercial, instead of looking primarily to the main general purpose of the operation.

Thus, in the case of *Sanitary Milk & Ice Cream Co. v. Hickman,* 119 W. Va. 351, 193 S. E. 553, while the court held that the cooperative engaged in manufacturing, processing, and selling dairy products, the milk from which such products were manufactured having been produced by its stockholders, was not entitled to exemption from the gross sales tax imposed by the statute which provided that sales by any person engaging or continuing in the business of horticulture, agriculture, or grazing, or of selling stock, bonds, etc., should be exempt from the payment of the tax, the opinion stated that the cooperative would have been exempt had it operated merely as a *marketing agency* for the individual producers.

We are of the opinion that the case of *Batt v. Unemployment Compensation Division,* 63 Idaho 572, 123 P. (2d) 1004, supports our conclusion that the operation of the milk routes in the cases now before us should not be determined to be a commercial operation rather than agricultural, merely because the dairies bought, for the purpose of resale on the routes, and as an accommodation to their milk customers, some dairy products other than milk. In the cited case, the question presented was whether Batt was liable for contributions under the unemployment compensation law of Idaho

upon wages paid for labor performed upon farm products purchased by Batt from farmers, and for the same kind of labor performed on farm products handled on so-called "consignment." The court was of the opinion that the activities of Batt and his employees on products purchased outright by him and the work done on products consigned was agricultural labor, and that Batt was not liable for contributions under the act.

In the case of *Mundell v. Swedlund,* 59 Idaho 29, 80 P. (2d) 13, the court stated that the case of *Dorrell v. Norida Land & Timber Co.,* 53 Idaho 793, 27 P. (2d) 960, supports the rule that it is the *whole character of the employment,* rather than *merely the pending task or the place of performance,* which must be looked to in order to determine whether the employee is engaged in an agricultural pursuit.

In the case of *Peterson v. Farmers State Bank of Eyota,* 180 Minn. 40, 230 N. W. 124, the court stated that the *whole character of the employment must be looked to,* in determining whether or not an injured employee is a farm laborer.

In the case of *H. Duys & Co. v. Tone,* 125 Conn. 300, 5 A. (2d) 23, the supreme court of Connecticut took the view that the employees of a corporation which was engaged in processing and handling shade tobacco grown *by and upon the land of others* were not agricultural laborers, under the exemption of the unemployment compensation act. In the cited case, the court quoted from *Davis & Co. v. Mayor,* 64 Ga. 128, 37 Am. Rep. 60, as follows:

" 'The business of a farmer is production, not trade, and the sale *directly by himself* of *what he rears or produces is merely occasional or incidental. . . . The producer whose trade is incident to production, and the middleman whose trade is intermediary between the producer and the consumer,* belong not to the same class, but to different classes of subjects in a scheme of taxation.' " (Italics ours.)

In the cited case, the court states that there is a dearth of cases of claims for exclusion, as agricultural labor, or work done by employees of such enterprises as creameries and cheese and canning factories, etc. The opinion continues:

"This strongly suggests recognition of a distinction such as that noted in *Keeney v. Beasman,* 169 Md. 582, 588, 182 Atl. 566, 'between the production and sale of milk yielded by cattle maintained on the farm *as a part of its operation,* and the business of *buying and selling milk, or of manufacturing and selling milk products apart from, and independent of, any farm,* for obviously in the latter case, the work, *not having any connection with a farm,* would not be agricultural in its nature.'" (Italics ours.)

The case of *American Sumatra Tobacco Corp. v. Tone,* 127 Conn. 132, 15 A. (2d) 80, is from the same jurisdiction as the *H. Duys & Co.* case, *supra.* The American Sumatra Tobacco Corporation was a grower and packer of tobacco, packing its own tobacco. The administrator of the unemployment compensation act made an assessment upon the corporation for the payment of contributions in respect to wages paid by it to persons employed in its warehouses packing the tobacco. Two of the warehouses were located on farms owned and operated by plaintiff, a third was on a farm owned and formerly operated by the plaintiff, and a fourth was in East Hartford. The court held that the work carried on by the plaintiff in its warehouses in preparing its crop of tobacco for market was an incident to ordinary farming operations, as distinguished from manufacturing or commercial operations.

The cited case is in line with our decision in *In re Wenatchee Beebe Orchard Co.,* 16 Wn. (2d) 259, 133 P. (2d) 283.

Transportation by the grower of his products to market has generally been recognized as an agricultural operation, or as incidental to the ordinary farm

operations, and within the meaning of the statutory exemption of agricultural labor.

In the case of *Hardy v. Gapen,* 141 Pa. Super. Ct. 101, 14 A. (2d) 892, the question involved was whether or not a boy who was injured while in the course of his employment upon a dairy farm was so engaged in agriculture as to exclude him from the benefits of the workmen's compensation act of Pennsylvania. The opinion states that the compensation authorities concluded that, because the farm work in which claimant was engaged when injured was merely incidental to the *operation of a dairy farm,* he was not engaged in agriculture, and was entitled to the benefits of the act. The opinion continues:

"Our consideration of this record has convinced us that the judgment must be reversed because the law has been misapplied to the facts of this case.

"Surely our legislature never intended to declare that every farmer who decides to transform the grain, grass and hay raised upon his farm into wool, eggs or milk by feeding these crops to his sheep, chickens or cattle, and *selling the resulting commodities at wholesale or retail,* has abandoned agriculture and entered upon an industrial business. The findings by the referee and board that claimant's employers 'were engaged in the dairy business' and that he 'assisted them in the delivery of the milk which they bottled at their farm and which they sold at *wholesale and retail* to various people in their community' are by no means conclusive of his right to compensation.

"It may be possible, in these days of certified dairies, etc., that the production and processing of milk might be carried on upon such a scale and under such circumstances that it would cease to be agriculture and become a purely industrial or commercial enterprise. Ordinarily, however, and in its broader sense, 'agriculture' includes 'farming, horticulture, forestry, dairying, sugar making, etc.' " (Italics ours.)

In the cited case, according to the facts stated in the opinion, the dairy farm there was operated in much

the same manner as were the dairies in the instant cases.

The opinion further states that the disposition of the case is controlled in principle by *Bucher v. American Fruit Growers' Co.*, 107 Pa. Super. Ct. 399, 163 Atl. 33, where a truck driver was injured while returning from a railroad station after delivering a load of apples from a fruit grower's farm; and *Rosenberry v. Gillan Bros.*, 130 Pa. Super. Ct. 469, 197 Atl. 523, a case in which the claimant was injured while selling from a roadside stand fruit grown upon a commercial fruit farm. In both cases it was held the employee was engaged in agriculture.

We are of the opinion that in the instant cases the fact that a considerable part of the milk produced was sold direct to consumers, on regular routes, rather than wholesale, should not be a determining factor, in considering whether or not the milk truck drivers were engaged in a commercial or agricultural operation. It has always been recognized that farmers often sell their produce directly to consumers as a normal incident to farming. See *Rosenberry v. Gillan Bros.*, *supra*.

We find nothing in the definition of agricultural labor in the 1941 amendment which would seem to limit the method employed by the farmer in disposing of his products; certainly not so long as the method employed could reasonably be considered as a part of the farm operations or an incident to ordinary farming operations.

The labor of employees in a greenhouse has by some courts been held to be nonagricultural, principally because the crops raised in greenhouses are grown under artificial, not natural, conditions, and because the operation of a greenhouse is more akin to industry than to agriculture. In this connection, however, see *Walling, Adm. v. Rocklin*, 132 F. (2d) 3, wherein the court held that a partnership operating greenhouses and flower gardens, and selling flowers, plants, and floral pieces

from a store in the city, were exempt from the operation of the fair labor standards act, as they were exclusively engaged in agriculture. In the cited case, the defendants sold and disposed of the flowers, plants, shrubs, etc., raised by themselves, *and some that they purchased from other growers,* at wholesale and retail. A small portion was sold from the greenhouse, but the greater portion from a building in the city, which was leased by defendants for that purpose. In this case, the owners of the greenhouse purchased from other growers some of the products which they sold, but still the court held that this did not change the business *from an exclusive agricultural operation* to a commercial one. It was urgently contended that the employees who worked in the *store* were not agricultural laborers, but the court said that the *nature of the work done at the shop should not be considered as segregated from the entire enterprise;* that everything done by the employees in this shop was *"an incident to,"* and *"in conjunction with," the agricultural enterprise which was being carried on by defendants.*

Our investigation of the statutes and regulations upon which the cited cases are based discloses that none of them purports to say in what particular manner the commodities produced on the farm may be marketed, but they seem to assume such products may be sold either at retail or wholesale.

The commissioner of unemployment compensation and placement in this state has recognized that the operation of a dairy farm is an agricultural activity, both before and since the 1941 amendment, and this ruling is in accord with the decisions generally. *Greischar v. St. Mary's College,* 176 Minn. 100, 222 N. W. 525; *Moulton v. Building Inspector of Milton,* 312 Mass. 195, 43 N. E. (2d) 662; *Kimball v. Blanchard,* 90 N. H. 298, 7 A. (2d) 394; *Keeney v. Beasman,* 169 Md. 582, 182 Atl. 566, 103 A. L. R. 1515, to which reference has heretofore been made.

The dairy farmer, like any other farmer, produces to sell, and the marketing of his product is necessarily an incident of the ordinary operation of the dairy.

The size of the operation will not, in and of itself, affect the nature of the operation. *Moulton v. Building Inspector of Milton, supra.* In that case, from 2,200 to 2,400 quarts of milk was produced, sold, and delivered daily by drivers on several milk routes.

We desire to call particular attention to the case of *Jones v. Gaylord Guernsey Farms*, 128 F. (2d) 1008. This case was appealed from the United States district court for the western district of Oklahoma. While the case was decided June 30, 1942, it involved operations prior to the 1939 Federal amendment hereinbefore referred to, and the case was therefore considered in connection with the social security act, which at that time exempted agricultural labor from the operation of the act, but did not define that term. However, regulation 90, promulgated under title IX, of the social security act, did define agricultural labor. While the wording of the regulation is not exactly the same as that found in our 1941 amendment, we think they are so nearly the same, at least in effect, as to make this case especially applicable herein. The facts in the cited case are as nearly like those in the cases before us as it would be possible to find, with the exception that in the cited case the milk truck drivers did not handle any products other than those produced on the farms.

In the cited case, the milk was cooled and bottled on the farm. Part of it was processed into cream, buttermilk, and cottage cheese. All of these products were sold to individuals, hotels, and grocery stores, both at wholesale and retail, and were delivered by trucks. The truck drivers did not live on the farm, but came early in the morning, drove the loaded trucks to the city, sold and delivered the milk products, and collected therefor. The opinion states:

"The regulation establishes two factors necessary in determining the scope of the exclusion—*the nature of*

*services rendered by an employee, and the dominant
purpose of the enterprise in which the employer is
engaged.*

"What constitutes 'agricultural labor' within the
meaning of the act is not easy of definition. The ques-
tion is one largely of first impression. The decisions
have not charted a clearly defined course by which
such question may be determined. It may be generally
said, however, that the term 'agriculture' has a wide
meaning and should not be restrictively interpreted,
but should be given a broad enough meaning to em-
brace agriculture as the term is understood wherever
the calling is followed. *United States v. Turner Turpen-
tine Co.,* 5 Cir., 111 F. (2d) 400; *Wayland v. Kleck,*
Ariz., 112 P. (2d) 207." (Italics ours.)

In the cited case, it was contended that Gaylord was
engaged in a commercial enterprise, but the court held
to the contrary. The opinion concludes:

"It is our conclusion that the bottlers and coolers,
carpenters, truckmen, and the cattle showmen are ex-
empt from the provisions of the act, but that the book-
keeper and stenographer are subject to its provisions."

The case of *Application of Butler,* 258 App. Div. 1017,
16 N. Y. S. (2d) 965, goes farther than the *Gaylord* case,
*supra.* In this case, Butler operated a farm of about
470 acres, on which he maintained a dairy of eighty-six
cows. He employed a bookkeeper, four milking ma-
chine operators, a herdsman, a stableman, two tractor
drivers, three drivers for his milk wagons, and six other
persons who worked on the farm. Some of the milk
was sold in the raw state, some after being pasteurized,
and some was separated and the cream sold. The cus-
tomers were largely individual householders, although
a small portion was sold to grocers for resale. A small
quantity of eggs were purchased by the employer and
resold *"for the convenience of customers."* The opinion
states:

"The sale of farm products is an incident and corol-
lary to the production. Farming, when conducted in a
business-like manner, does not lose its identity. An

employee who keeps records concerning the production of farm produce and its sale is engaged in tilling the soil as well as the employee who stirs the surface of the earth with a hoe. The acts are interrelated and on a farm of the size owned by this employer, conducted as he conducted the business, the scrivener and accountant are as necessary as the cultivator."

The court held all the employees were farm laborers.

It should be kept in mind that in the instant cases it is not contended by the commissioner that these dairy farms are not agricultural in nature; in fact, it is admitted that they are. Nor is it contended that any of the employees other than the milk truck drivers and milkhouse men are within the act.

The terms "in connection with the operation" and "as an incident to ordinary farming operations" are broad terms, and it is our opinion the legislature intended them to have a broad meaning. It seems to us it must have been apparent to the legislature that it would be impossible to list specifically all the separate activities which might properly be incident to a farming operation. We are of the opinion that, in determining the question here presented, we must first look to the main purpose for which the farm is being conducted. It must be conceded that the main purpose of these dairy farms is to produce milk, and market or sell the milk so produced. In preparing the milk for sale, it is necessary to bottle it and to pasteurize some of it. Pasteurizing does not change the form of the milk, but only takes out certain impurities. The milk is still the same milk, and is used for the same purposes as raw milk.

Regardless, then, of the fact that the 1941 amendment does not contain the word "processing," we are of the opinion that the employees in the Hansen case who work in the milkhouse, bottling, pasteurizing, and taking care of the milk, are doing work that is incident to ordinary dairy farm operations; in fact, it is a necessary part of such operations.

We are also of the opinion that the milk truck drivers in all of these cases are agricultural laborers, within the meaning of the 1941 amendment. We are further of the opinion that the main purpose of the milk routes is to sell and distribute the milk produced on the dairy farms, and the fact that the owners of the dairies purchase and resell some other dairy products, for the accommodation of their milk customers, would not, in our opinion, under the facts herein, change the nature of this operation to a commercial one. Apparently the method employed by the dairies here involved to dispose of their milk has been the custom for some years, and it is not unreasonable to assume the legislature was conversant with it.

We do not desire to be understood as holding that a dairy farm might not operate a milk route or routes in such a manner that such operation would not be considered as a commercial one, but we are convinced that, in the cases now before us, the milk routes were operated as a necessary part of the dairy farm operations.

Concluding as we do that the services of the milk truck drivers and milkhouse men herein come within the meaning of the statutory definition of agricultural labor, it becomes unnecessary to discuss regulation 17 promulgated by the commissioner. Assuming that the commissioner has the authority to adopt regulations not inconsistent with the statute, having held that the services here performed come within the meaning of the statute, it becomes unnecessary for us to decide whether or not the commissioner had authority to adopt regulation 17.

We now pass to the question raised in the Christensen case, that the state was precluded from bringing this action because there was an administrative proceeding pending, which involved the same question of law presented in this case. Appellant's contention that there was a proceeding pending before the commissioner is based upon the fact that appellant had written

a letter to the commissioner, asking for a return of the $73.04 inadvertently paid, which sum covered the period from October 1 to December 31, 1941.

Conceding that one who seeks a refund under the unemployment compensation act must proceed according to Rem. Supp. 1941, § 9998-114f (*Mulhausen v. Bates,* 9 Wn. (2d) 264, 114 P. (2d) 995), and considering the above letter as a petition, still we are of the opinion that such action on the part of claimant would not prevent the commissioner, in the name of the state, from bringing a civil action to collect delinquent assessments. Such action on the part of the commissioner is clearly authorized by Rem. Supp. 1941, § 9998-114k.

We are inclined to the view that appellant in the Christensen case was not entitled to set up, by way of cross-complaint, her claim for a refund of the $73.04 inadvertently paid, in view of Rem. Supp. 1941, § 9998-114i, which provides that the remedies provided by the act for determining the justness or correctness of a refund shall be exclusive. However, we do not deem it necessary to decide this question, in view of the statement made in open court by counsel for the state, that the department was ready and willing to refund the $73.04, in the event it was determined that the assessment levied against appellant dairy was unauthorized. It may be assumed, in view of the above statement and our decision herein, that the commissioner will make such refund, as he has the power to do so under Rem. Supp. 1941, § 9998-114f.

█ Appellant in the Christensen case also contends the court erred in failing to fix, as between attorney and client, a reasonable fee for appellant's attorneys, and in failing to allow and order such fee to be paid out of the unemployment compensation administration fund.

We are of the opinion that, this being a civil case, the trial court was not authorized to allow or fix attorney's fees or costs, other than as provided by statute

for civil actions, and was not authorized to order any attorney's fees or costs paid from the unemployment compensation administration fund. As we read Rem. Supp. 1941, § 9998-106i, it is only in case of an appeal from the decision of the commissioner, and where such decision is reversed or modified, that the court is authorized to order the attorney's fees, witness fees, and costs to be paid from the unemployment compensation administration fund.

This being a civil action, there is nothing to prevent counsel for appellant from making such charge for their services as they may deem reasonable, or counsel and their client from agreeing on an attorney's fee.

For the reasons herein assigned, we conclude that the trial court erred in holding the Christensen dairy was liable for contributions based upon the wages paid its milk truck drivers.

■ We shall next discuss the cross-appeal of the commissioner. In the three administrative cases, the court allowed appellants' counsel the sum of $66.66 as a reasonable attorney's fee as against each of the appellant dairies, and the further sum of twenty-five dollars as an attorney's fee in the Smithers Farm Dairy case, and a like sum in the Riverview Farm case, the last two sums to be paid from the unemployment compensation administration fund. We are of the opinion the trial court erred in allowing any attorney's fee to be paid from such fund, for the reason, as hereinbefore stated, that it is only in the event the decision of the commissioner is reversed or modified that the court may order such fees and costs to be paid from this fund. In the three administrative cases, the trial court affirmed the order of the commissioner.

The judgment entered in the Christensen case must be and is hereby reversed, with directions to enter a judgment to the effect that this dairy is not liable for contributions under the unemployment compensation act, based upon the wages paid its milk truck drivers,

for the reason that such employees are agricultural laborers, within the meaning of Rem. Supp. 1941, § 9998-119g (6) (i). Appellant is entitled to the statutory attorney's fee on this appeal.

We are further of the opinion that, in the three administrative cases, the commissioner and the trial court misapplied the law to the facts, and that the judgment entered in those cases must be and is reversed, with directions to the trial court to enter a judgment to the effect that these three dairies are not liable for contributions under the unemployment compensation act, based upon wages paid their milk truck drivers or milkhouse men, such employees being agricultural laborers, within the meaning of Rem. Supp. 1941, § 9998-119g (6) (i).

We are also of the opinion that a reasonable attorney's fee to be fixed and allowed in each of these three cases is the sum of two hundred dollars, and that such fees, together with the costs of this appeal, should be paid from the unemployment compensation administration fund. The judgment will so provide.

SIMPSON, C. J., MILLARD, STEINERT, and MALLERY, JJ., concur.