OPINION TO THE GOVERNOR.
APRIL 11, 1951.
PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

OPINION TO THE GOVERNOR relative to validity of constitutional amendments approved by voters on November 7, 1950 and involving permanent registration of voters and qualification of servicemen to vote in financial town meetings.

April 11, 1951

To His Excellency Dennis J. Roberts,
  Governor of the State of Rhode Island
    and Providence Plantations.

We have received from your excellency a request for our written opinion, in accordance with the provisions of section 2 of article XII of amendments to the constitution of this state, upon the following questions:

"1. Does the approval of the proposition providing for permanent registration annul Article XX of the amendments to the constitution of this state as it existed before November 7, 1950?

"2. Does the approval of the proposition for the exemption of veterans in the qualification of electors annul Article XX of the amendments to the constitution of this state as it existed before November 7, 1950?

"3. If the proposition providing for permanent registration annulled Article XX of the amendments to the constitution of this state as it existed before November 7, 1950, does the approval of the proposition exempting veterans in the qualification of electors annul the effect

of the approval of the proposition providing for permanent registration?

"4. Both of the above propositions having been approved by the electors, are either or both now effective amendments to the constitution of this state?"

On November 7, 1950 the electors by the required constitutional majority approved the two propositions of amendment to the constitution of the state which are hereinafter set out in full and designated as Appendix A and Appendix B. For convenience we shall refer to such propositions respectively as the permanent registration amendment and the servicemen's exemption amendment.

An examination of the provisions of the permanent registration amendment shows that among other changes it was designed not only to require registration as a prerequisite to the right to vote by those electors not owning real estate or not having paid a tax assessed upon their personal property to the value of at least $134, but also to provide that registration should be required of all voters, including real estate voters who under the existing constitution were not required to register. By section 7 it further provided that, among other things, said amendment was to take the place in the constitution of article XX of amendments to the state constitution which article it expressly annulled. However, the approval of this amendment on November 7, 1950 did not effect any change as of that date in the constitutional requirements for registration and voting, because by the very terms of section 6 thereof the proposed fundamental changes in the law governing elections, primaries, caucuses, or meetings, and in the qualifications for voters therein prescribed were expressly postponed until the first day of July next following its adoption, which would be July 1, 1951. In the meanwhile this amendment expressly provided by reference that the qualifications for voting and registration which presently prevailed under article XX of the existing constitution would remain unchanged and in effect during

the period between its approval and July 1, 1951. The importance of these provisions will hereinafter appear.

On the other hand an examination of the servicemen's exemption amendment shows that it was designed to amend only article XX of amendments to the state constitution in a single particular. It authorized servicemen, who were assessed upon personal property to the value of at least $134 but who by reason of lawful exemption had paid no tax thereon, to vote on any proposition to impose a tax or for the expenditure of any money in any town as distinguished from a city. By section 2 this amendment was to take in the constitution the place of section 1 of article XX of the articles of amendment and it also declared that all other provisions of the constitution inconsistent therewith should be null and void.

As will be seen by comparison this was a much less comprehensive and specific change in electoral qualifications than that provided by the permanent registration amendment. In other words the servicemen's exemption amendment conferred upon this special class of electors a right to participate and to vote in financial town meetings. Except in the one particular noted it preserved intact and expressly restated the qualifications appearing in article XX of amendments as it existed on November 7, 1950. And it is to be noted that unlike the permanent registration amendment there was no provision in the servicemen's exemption amendment postponing to a future date the taking effect of any part thereof. Hence the change it made in the law could become effective immediately upon its approval.

From these analyses it is obvious that there would be a sharp conflict between these two amendments if each by its terms was designed to operate as a whole on the day it was approved. In such a case some of the chief qualifications for voting under the existing article XX of amendments are radically altered or repealed and others are substituted by virtue of the permanent registration

148

amendment. On the other hand by virtue of the servicemen's exemption amendment all the former qualifications under article XX are re-enacted word for word, excepting the new provision authorizing servicemen to vote in financial town meetings notwithstanding that by reason of exemption they had not paid a tax on their personal property. Moreover the permanent registration amendment makes no such provision for exemption of servicemen.

Thus, if both amendments by their terms were designed to go into immediate and entire effect on the day of their approval, Novmber 7, 1950, they would be mutually exclusive of each other and therefore irreconcilable in respect to the basic qualifications and requirements for registration and voting by an elector. In such a case the law is well settled that both amendments must fall as it is impossible to know the final will of the electors and to give it effect. 1 Cooley Con. L. (8th ed.) chap. IV, p. 130.

But the same authority also points out at page 129: "If two amendments are adopted on the same day they must be construed together and effect given to both. Differences, if there are any, must, if possible, be reconciled." We are agreed that if the amendments in question here were simultaneously operative in their entirety on the day of their approval there would be no possible way to reconcile their mutually exclusive provisions. There is, however, a way in which we think both amendments reasonably can and should be saved, one in whole and the other in part, at least as to a certain period of time. This result is achieved by applying the above rule of construction to the terms of each amendment as it pertains to the time when the proposed changes under each would become operative.

As pointed out earlier in this opinion, although both amendments were approved on the same day they did not provide for changes in the qualifications of electors that would become effective immediately. The change contemplated by the servicemen's exemption amendment by its

terms could operate upon its approval and become effective at once as the constitutional law of the state. Furthermore it is self-operating without the aid of any statute. Accordingly any otherwise qualified serviceman who was assessed upon personal property to the value of at least $134 in any town as distinguished from any city but who had not paid the tax assessed thereon by reason of his exemption, thereby became eligible to vote in any financial town meeting thereafter held.

The basic changes in the qualifications of an elector provided by the permanent registration amendment, as contrasted with those prevailing in article XX and restated in the servicemen's exemption amendment, are not yet in operation since the permanent registration amendment also expressly continues in effect all existing constitutional provisions as to qualifications until the changes proposed therein are to become operative on July 1, 1951. If, therefore, we look upon such amendment as the governing constitutional law of the state concerning the subject matter it undertakes to regulate, there is *presently* no conflict between this amendment and the servicemen's exemption amendment. Under the latter, the qualifications formerly stated in article XX of the amendments are expressly continued in effect as thereby amended, and under the permanent registration amendment the same result is expressly accomplished for the period from its adoption until July 1, 1951. Consequently at least until that date there is no conflict and no change in the law as to the basic qualifications and requirements of an elector for registration and voting.

Under this view the inconsistency between the two amendments is postponed until July 1, 1951. In our opinion, however, this conflict can be reasonably resolved as of that date, at least in favor of one amendment. It is stated as a recognized principle of construction of written constitutions, as well as of statutes, that of two irreconcilably repugnant provisions therein the one which is last in order

of time is to be preferred, particularly where the latter is more comprehensive and specific than the former. *Quick v. White-Water Township,* 7 Ind. 570; *Gulf, Colorado & Santa Fe Ry.* v. *Rambolt,* 67 Texas 654.

If these amendments are considered from the viewpoint of the date when the basic changes provided by each according to its terms could become effective, the permanent registration amendment obviously would be last in order of time. Moreover that amendment also is plainly more comprehensive in its proposed changes in regard to the rights and qualifications of all the electors than is the servicemen's exemption amendment, which affects only a comparatively small segment of the electorate in a very much restricted field, namely, financial town meetings. If we apply the above-mentioned rule of construction to such considerations, the permanent registration amendment should be upheld even though the effect thereof is to annul the servicemen's exemption amendment on July 1, 1951.

While the problem and solution here presented are not without difficulty, it is our opinion that on July 1, 1951 the changes in the law as to basic qualifications of an elector as provided by the permanent registration amendment will be the effective constitutional law of the state; that by virtue of section 7 thereof it will have taken the place of article XX of amendments to the constitution; and that such article XX as amended on November 7, 1950 by the servicemen's exemption amendment, being then inconsistent with the more comprehensive and specific qualifications and requirements of an elector for registration and voting will be thereby annulled.

We have come to this conclusion after careful deliberation, having had the benefit of briefs and arguments by the attorney general and counsel designated by the bar associations of the state as *amici curiae.* Our first consideration in seeking a solution of this problem was to keep constantly in mind that the sovereign will of the people exercised in amending their constitution should not be declared a nullity by us unless their will had been expressed

in such a manner that it created inescapable ambiguity and doubt as to its true meaning.

Thus, in order to give some effect to the people's will as expressed in these amendments, we have leaned in favor of resolving any doubt and ambiguity in the premises to such extent as we deemed reasonably possible. If this were not done, each amendment, although approved by the electorate, would nullify the other and both would fall completely. However, we have scrupulously refrained from rewriting the amendments themselves in accordance with what we might conceive the people must have intended when they approved both amendments on November 7, 1950. On the contrary we have taken the actual language of the amendments as the expression of their will and have sought to give effect thereto so far as it was reasonably possible without rewriting such parts of the amendments as are inconsistent.

In accordance with this conception of our duty and of the rule of construction above mentioned, we therefore answer the first and second questions in the affirmative, and the third question in the negative. As to the fourth question, we answer that both amendments are operative as parts of the constitution in the following manner: The exemption amendment is controlling until July 1, 1951 and the permanent registration amendment is controlling on and after July 1, 1951.

EDMUND W. FLYNN
ANTONIO A. CAPOTOSTO
HUGH B. BAKER
FRANCIS B. CONDON
JEREMIAH E. O'CONNELL

APPENDIX A
(Permanent Registration Amendment)
"Article ————

"Section 1. Every citizen of the United States, of the age of twenty-one years or over, who has had his residence and home in this state for one year and in the

town or city in which he may offer to vote six months next preceding the time of voting, and whose name shall be registered in accordance with this article and the statutes adopted under its authority in the town or city where he resides at least sixty days next preceding the time of his voting shall, except as provided in section 2 hereof, have a right to vote in the election of all civil officers and on all questions in all legally organized town, ward, or district meetings so long as he continues so qualified. A person who has so registered shall not be required to register again so long as he continues to have his residence and home in said town or city and continues to be otherwise qualified; *provided, however,* that if a registered voter has not voted at least once at an election, primary, caucus or meeting within the five preceding calendar years his registration shall be cancelled, except that the registration of no person shall be so cancelled during his service in the armed forces of the United States. A voter whose registration has been so cancelled shall not thereafter be eligible to vote unless he shall again register in accordance with this article and the statutes adopted under its authority.

"Sec. 2. No person shall, except as provided in section 3 hereof, at any time be allowed to vote upon any proposition to impose a tax or for the expenditure of money in any town, as distinguished from a city, unless he shall either (1) be really and truly possessed in his own right of real estate in such town of the value of one hundred thirty-four dollars over and above all incumbrances, or which shall rent for seven dollars per annum over and above any rent reserved or the interest of any incumbrances thereon, being an estate in fee-simple, fee-tail, for the life of any person, or an estate in reversion or remainder, which qualifies no other person to vote, the conveyance of which estate, if by deed, shall have been recorded at least ninety days prior to the time of voting or (2) shall within the year next preceding have paid a tax assessed upon his personal property in said town of the value of at least one hundred thirty-four dollars.

"Sec. 3. If the general assembly shall at any time

vest the authority to impose taxes and for the expenditure of money in any town or city in a budget commission, such commission shall consist of not less than five nor more than fifteen electors, of such qualifications and with such powers as the general assembly may prescribe, to be elected by the qualified electors of such town or city. No such budget commission shall be created for a town, as distinguished from a city, unless the electors thereof in a financial town meeting regularly called, due notice of such proposition appearing in the call for such meeting, shall by a majority vote of those present and voting, vote to submit such proposition to the electors of such town qualified to vote upon any proposition to impose a tax or for the expenditure of money, at the next regular election of town officers, and unless such electors at such election shall by a majority vote of those present and voting approve such proposition.

"Sec. 4. The general assembly shall provide by law for a uniform registration of voters who possess the qualifications prescribed in this article and shall include in such provisions suitable methods of identification of such voters, by signature or otherwise.

"Sec. 5. Until the general assembly shall otherwise prescribe: Whenever any person eligible to vote shall register to vote in any town or city he shall be required to sign his name on three separate and distinct cards, or in three separate and distinct books or on one or more cards and in one or more books making a total of three cards or books in all, and at the time he shall so register he shall be given by the official or clerk so registering him an identification card upon which such qualified elector shall sign his name in the presence of such official or clerk. The general assembly may provide by law that in case any person shall be unable to sign his name because of physical incapacity or otherwise he may be exempted from the foregoing provisions in regard to signing his name and the general assembly shall provide that in such cases such person shall comply with other requirements which shall assist in providing identification of such voter. One of said registration cards or books shall

at all times be retained in the custody of the town or city official or board in whom or in which is vested authority to register voters, one of said registration cards or books shall be sent by said town or city official or board to the state official or board in whom or in which is vested authority to supervise elections throughout the state and one of such registration cards or books shall be sent by said town or city official or board to the polling place or meeting at which any votes are to be taken or election, primary or caucus is to be held and shall be delivered by said official or board to the moderator of said polling place or meeting and shall at all times during the conduct of such election, primary, caucus, or meeting be kept in the custody of said moderator, and following the conclusion of such election, primary, caucus, or meeting shall be redelivered by the moderator to said town or city official or board.

"Sec. 6. In all elections, primaries, caucuses, or meetings held before the first day of July occurring next after six months following the adoption of this amendment, the qualifications to vote, including the registration qualifications, requirements and periods, shall be the same as before the adoption of this amendment. No person shall, however, be qualified to vote in any election, primary, caucus or meeting held on or after said first day of July, unless he shall be registered under the authority of this article and all voters, whether they have theretofore been real estate, personal property or registry voters shall be required to register under the authority of this article in order to continue to be qualified to vote after said date.

"Sec. 7. This amendment shall take in the constitution of the state the place of section 1 of article II and of articles XVIII and XX of the amendments to said constitution, which said section and articles and all other provisions of the constitution inconsistent herewith are hereby annulled; *provided, however,* that nothing contained in this article shall in any way be deemed to modify or affect the provisions of article XXII of the amendments to the constitution except that the reference therein to article XX of the

amendments to the constitution shall be deemed to refer to this article."

APPENDIX B

(Servicemen's Exemption Amendment)

"Article ————

"Section 1. Every citizen of the United States of the age of twenty-one years, who has had his residence and home in this state for two years, and in the town or city in which he may offer to vote six months next preceding the time of his voting, and whose name shall be registered in the town or city where he resides on or before the last day of June in the registration period next preceding the time of his voting shall have a right to vote in the election of all civil officers and on all questions in all legally organized town, ward or district meetings;

"*Provided,* That no person shall at any time be allowed to vote upon any proposition to impose a tax or for the expenditure of money in any town, as distinguished from a city, unless he shall be qualified under section 1 of article II of this constitution, or unless he shall within the year next preceding have paid a tax assessed upon his personal property in said town, of the value of at least one hundred and thirty-four dollars, or unless he shall be exempted from the payment of a tax upon personal property of the value of at least one hundred and thirty-four dollars owned by him, by reason of his having served in the armed forces of the United States of America; and

"*Provided,* That if the general assembly shall at any time vest the authority to impose taxes and for the expenditure of money in any town or city in a budget commission, such commission shall consist of not less than five nor more than fifteen electors, of such qualifications and with such powers as the general assembly may prescribe, to be elected by the qualified electors of such town or city; and

"*Provided,* That no such budget commission shall be created for a town, as distinguished from a city, unless the electors thereof in a financial town meeting regularly called, due notice of such proposition appearing in the call for such meeting, shall by a majority vote

of those present and voting, vote to submit such proposition to the electors of such town qualified to vote upon any proposition to impose a tax or for the expenditure of money, at the next regular election of town officers, and unless such electors at such election shall by a majority vote of those present and voting approve such proposition; and

"*Provided,* That any elector, being otherwise qualified, whose name is on the real estate or the personal property voting list of any town or city on the date of the adoption of this article of amendment by the electors of the state, and any elector, being otherwise qualified, whose name shall thereafter be placed upon such list as a real estate or personal property voter, shall have a right to vote in the election of all civil officers and on all questions in all legally organized town, ward, or district meetings, and to have his name retained on said list without further registration, so long as he continues so qualified; and in the event that an elector whose name is on the real estate voting list of any town or city at the end of any registration period for voters shall thereafter during the next succeeding registration period for voters transfer all his real estate in said town or city, as shown by record, his name shall forthwith be transferred to the list of registry voters, unless qualified as a personal voter, and such elector shall be entitled to vote as a registry voter during the remainder of the then current registration period for voters; and in the event that an elector whose name is on the personal property voting list of any town or city at the end of any registration period for voters thereafter during the next succeeding registration period for voters fails to pay the personal property tax assessed against him, his name shall be transferred to the list of registry voters, and such elector shall be entitled to vote as a registry voter during the remainder of the then current registration period for voters; and

"*Provided,* That the registration period for voters shall include the two years ending June 30th next preceding the election of general officers of the state.

"Sec. 2. This amendment shall take in the con-

stitution of the state, the place of section 1 of article XX of the articles of amendment, adopted November 6, 1928, which said section and all other provisions of the constitution inconsistent herewith are hereby annulled."

*William E. Powers,* Attorney General; *Robert A. Coogan,* Assistant Attorney General.

*Jacob S. Temkin, Knight Edwards, William L. Kelaghan, Jr., A. Peter Quinn, Jr., amici curiae.*

*Charles H. Drummey, Charles F. Cottam, Julius C. Michaelson, William M. Sloan, amici curiae.*