Gordon HINES, Plaintiff in Error,

v.

Leo WINTERS, as Secretary of the State Senate of the State of Oklahoma; John B. Moore, County Registrar of Oklahoma County, Oklahoma; Russell L. Morgan, Chairman of the Election Board of Oklahoma County, Oklahoma; Warren B. Morris, Member of the Election Board of Oklahoma County, Oklahoma; and Thomas E. Bennett, Member of the Election Board of Oklahoma County, Oklahoma, and Secretary of said Board, Defendants in Error, and

Maude May Bisbee et al., Old Age Intervenors.

No. 37743.

Supreme Court of Oklahoma.

Dec. 24, 1957.

Rehearing Denied Jan. 28, 1958.

A. E. Pearson, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Fred Hansen, First Asst. Atty. Gen., for defendant in error Leo Winters, as Secretary of State Senate of Oklahoma.

James W. Bill Berry, County Atty., M. M. Thomas, Asst. County Atty., Oklahoma City, for defendants in error County Officers named in caption.

Miskovsky & Miskovsky, Oklahoma City, for old age intervenors.

CARLILE, Justice.

Gordon Hines instituted this action in the District Court of Oklahoma County, Oklahoma, against Leo Winters, Secretary of the State Senate of the State of Oklahoma, John B. Moore, County Registrar of Oklahoma County, Russell L. Morgan, Chairman of the Election Board of Oklahoma County, Warren B. Morris and Thomas E. Bennett, Members of the Election Board of Oklahoma County, and alleged in substance in his petition that he was a resident and duly qualified, registered elector and taxpayer of Oklahoma City; that under the charter and ordinances of the city a general election was coming soon to elect certain members of the City Council with the right of each citizen of the city who is a regular and qualified elector to vote in said election, including the plaintiff; that he is vitally interested as to who shall be elected to the Council to run and direct the affairs of the city, and to have the candidates for said offices elected only by qualified voters within the Constitution and law; that the defendants will soon name precinct registrars where all persons not now registered under the law may do so and qualify to vote in said election; that heretofore the defendants have permitted, and will before the coming election, permit certain people to register, qualify and vote in violation of Section 1, Article 3, of the Constitution of Oklahoma,

as amended in 1918, which provides as follows:

"Qualified electors of this State shall be citizens of the United States, citizens of the State, including persons of Indian descent, (native of the United States), who are over the age of twenty-one years and who have resided in the State one year, in the county six months, and in the election precinct thirty days next preceding the election at which such elector offers to vote. Provided, that no person adjudged guilty of a felony, subject to such exceptions as the legislature may prescribe, *nor any person kept in a poor house at public expense,* except Federal, Confederate and Spanish-American ex-soldiers, nor any person in a public prison, nor any idiot or lunatic, shall be entitled to register and vote."

It is further alleged that defendants have permitted to be registered as qualified electors in Oklahoma County and Oklahoma City many hundreds of people who are not qualified under the provisions of the Constitution, and will in the future permit unqualified registration in violation of the provisions of the Constitution; that before and at a general election in Oklahoma City they will permit people to register and vote who are not qualified to vote under Section 1, Article 3 of the Constitution and Section 103.12, Title 26 O.S.Supp.1957, unless restrained and ordered by the court to refuse new applicants to register in violation of the Constitution, and to cancel those who have so registered; that unless the rules of common law have been changed by statute or the Constitution the common law prevails; that at the time of the adoption of the Constitution of Oklahoma in 1907 and Amendments in 1910 and 1918 there were no people under the law or Constitution depending solely upon taxes for livelihood except those in poor houses and, therefore, the spirit and purposes of the above provisions of the Constitution were trying to comply with the common law, which provides that paupers and people depending upon public funds for livelihood should not have a right to vote, except veterans and soldiers of war; that about 1935 Oklahoma passed and amended laws setting up support for the aged, sometimes referred to as Old Age Assistance, applying to people that were over 65 years old and having no means of support and not physically able to support themselves, and are now solely supported out of taxes and are in the same shape and condition as inmates were in 1918 in poor houses; that it is the duty of the Court to enforce the spirit and letter of the Constitution and to enjoin the defendants from permitting such people to register and vote in the coming election, and to cancel all such who have already registered to vote, and prayed judgment enjoining the defendants from permitting any applicant to register who is living totally upon taxes and are not soldiers of war or employees of State, Federal, City or County government.

On motion of Maude May Bisbee et al., named therein, all of whom were alleged to be residents of Oklahoma County and recipients of Old Age Assistance from the State, on behalf of themselves and others similarly situated, were permitted to intervene in the action as parties defendant. Defendant, Leo Winters, Secretary of the State Senate, filed a demurrer to plaintiff's petition based on the ground that the same did not state facts sufficient to state a cause of action in favor of the plaintiff and against the defendants. A similar demurrer was filed by the defendants, John D. Moore, County Registrar, and other named County officials; also the parties by intervention likewise demurred. Each of the demurrers was sustained, and the plaintiff having elected to stand on his petition, the cause was dismissed, and the plaintiff gave notice of appeal and has perfected an appeal by transcript in this court.

 The parties will be referred to as they were in the District Court.

The plaintiff states in his brief filed herein that:

"* * * there is but one question involved and that being strictly a law question as to whether the old age pensioners in the State of Oklahoma should be registered to vote or allowed to vote who are wholly dependent upon taxes for their livelihood."

And as his first proposition contends:

"* * * that under the Constitution of Oklahoma, and under the common law that is enforced in Oklahoma and the legislative acts pertaining thereto, that poor people and indigent people who are living absolutely off of taxes are disqualified to vote."

In support thereof plaintiff refers to Article 3, Section 1, of our Constitution, previously quoted, which defines the qualifications of an elector; he also refers to Title 12 O.S.1951 § 2, which provides that the common law, as modified by the Constitution and statutory law, judicial decisions and the condition and wants of the people shall remain in force and aid of the general statutes of Oklahoma. This particular statute has no direct application, as we view it, to the present question. The qualification of electors is fixed by the clear and unambiguous provisions of our Constitution and statutory law, and the common law affords no aid in a proper interpretation of the Constitution and statute relating to electors.

Also referred to by plaintiff, without comment thereon, is Article 17, Section 3, of our Constitution, which provides that counties may provide for inhabitants who, by reason of age, infirmity or misfortune, may have claims upon the sympathy and aid of the county.

Legal definitions of "poor", meaning destitute, subjects of charity, etc., from out of state decisions are cited, also excerpts from the constitutions of several states which restrict the right of persons to vote unless possessed of certain qualifications, and denying inmates of charitable institutions supported by taxes the right to vote.

Our attention is also called to Title 56 O.S.1951, Chapter 7, Sections 161–203, inclusive, creating the State Department of Public Welfare, and to Section 164 thereof defining those to whom assistance may be given under the Act. We have considered the sections of the Constitution, statutes, decisions and authorities relied upon by the plaintiff in support of his first proposition and find none having particular application or of material aid in construing the section of the Constitution relied on by plaintiff in support of his proposition. We think the first proposition advanced by plaintiff is not sustained by the authorities which he relies on.

The plaintiff alleges that the defendants have permitted many hundreds of people to register and vote who are not qualified under the Constitution to do so, and will permit others to do so, but the petition is somewhat indefinite as to whom or what class of persons plaintiff concludes have been permitted to vote in violation of the Constitution. He concludes the petition with a prayer that the defendants be enjoined from permitting an applicant to register and vote who is living entirely on taxes, except soldiers or veterans of war or government employees.

Article 3, Section 1, of the Constitution fixes the qualification of an elector and contains a proviso that no person "kept in a poor house at public expense * * * shall be entitled to register and vote". 26 O.S.1951 § 61 provides that no person, while kept in a poor house or asylum at public expense, except Federal and Confederate ex-soldiers, shall be allowed to vote.

Plaintiff asks us to interpret and construe the language of the Constitution to mean that no person living solely upon taxes, except a soldier or government employee, shall be entitled to register and vote. To so hold would, in effect, ignore the words "kept in a poor house". No

applicable decision or authority is cited in justification for such holding. It is alleged that the common law forbids paupers depending upon public funds from voting. If so, it does not follow that this court should or must hold the same. Our Constitution, by plain and unambiguous language, prohibits a person kept in a poor house at public expense from registering and voting, and does not apply to persons receiving assistance under the act creating the State Department of Public Welfare, which specifically provides that a beneficiary under the act cannot be an inmate of a public institution. The quoted exceptions to the right to vote are unambiguous and cannot, under the guise of construction, be modified or enlarged by judicial construction.

In the opinion of State ex rel., Ogden v. Hunt, Okl., 286 P.2d 1088, 1091, it is stated:

"All courts recognize that if the wording of a provision of a statute or constitution is plain, clear and unambiguous, its evident meaning must be accepted and there is no reason or justification for the use of interpretative devices to fabricate a different meaning."

Latting v. Cordell, 197 Okl. 369, 172 P.2d 397, holds:

"The object of construction, applied to a constitution, is to give effect to the intent of its framers, and of the people adopting it. This intent is to be found in the instrument itself; and when the text of a constitutional provision is not ambiguous, the courts, in giving construction thereto, are not at liberty to search for its meaning beyond the instrument."

And in the body of the opinion is the following statement, which we consider applicable to the present action:

"Until the present action was filed the question now before us was never raised. This acquiescence cannot justify a particular holding in this case, but the long and continued interpretation of the constitution of such acquiescence is an aid in removing doubt as to the meaning of such constitutional provisions as intended by the framers thereof."

The question raised in the present action has not been presented previously although the section of the Constitution involved has been in effect since its adoption in 1907.

In McCain v. State Election Board, 144 Okl. 85, 289 P. 759, 760, it is held:

"The construction which has been placed upon a statute by the officer or governmental department charged with the carrying out of the provisions of the law is to be accorded due consideration by the courts in construing the statute."

Shaw v. Grumbine, 137 Okl. 95, 278 P. 311, 315, holds:

"To get at the thought or meaning expressed in a statute, a contract or a Constitution, the first resort, in all cases, is to the natural signification of the words, in the order of grammatical arrangement in which the framers of the instrument have placed them. If the words convey a definite meaning, which involves no absurdity, nor any contradiction of other parts of the instrument, then that meaning, apparent on the face of the instrument, must be accepted, and neither the courts nor the Legislature have the right to add to it or take from it."

In the case of Hopkins v. United States, 235 F. 95, 96, the Circuit Court of Appeals, in reviewing a decision of the United States District Court for the Eastern District of Oklahoma held:

"All that is not clearly embraced in an exception from the general words of a statute remains within the scope of the principal provision."

In the City of Bristow ex rel., Hedges v. Groom, 194 Okl. 384, 151 P.2d 936, 940, the opinion holds in part:

"The cardinal rule of statutory construction, to which all other rules are

subordinate, is to ascertain the intention of the Legislature (25 R.C.L. 960), and this should ordinarily be done by a consideration of the language of the statute, and the courts should not read into a statute exceptions not made by the Legislature."

State v. Christensen, 18 Wash.2d 7, 137 P.2d 512, 518, 146 A.L.R. 1302, holds:

"Exceptions, generally, [in statutes] should be strictly, but reasonably, construed; that they extend only so far as their language warrants; and all doubts should be resolved in favor of the general provision, rather than the exception."

The Supreme Court of Washington in State ex rel. Banker v. Clausen, 142 Wash. 450, 253 P. 805, 807, cites with approval the following text from 6 R.C.L. 46:

"A cardinal rule in dealing with Constitutions is that they should receive a consistent and uniform interpretation, so that they shall not be taken to mean one thing at one time and another thing at another time, even though the circumstances may have so changed as to make a different rule seem desirable. * * * Constitutions do not change with the varying tides of public opinion and desire."

We have considered the plaintiff's second proposition which is to the effect that in construing the Constitution or statutes our courts should analyze the purpose of the people and Legislature in adopting and enacting the same. Such proposition, as a principle of law, is sound and supported by precedent. What we have heretofore stated, and the authorities cited in support thereof, are in accord with the second proposition advanced by plaintiff.

■ We have considered plaintiff's petition, his argument and authorities presented in support of the meaning and construction which he urges us to place on the language of the proviso and Constitution under consideration, but we do not agree with the construction which he alleges and contends we should place on such language. We conclude and hold that the plain and unambiguous language in the proviso and Constitution that no person "kept in a poor house at public expense" cannot be construed and held to include and apply to persons not so situated nor clearly included within the proviso. We conclude and hold, as did the District Court, that plaintiff's petition fails to state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendants.

No error is shown in the action of the District Court in sustaining the demurrers to plaintiff's petition and dismissing the action.

The order and judgment of the District Court are affirmed.