449 P.2d 18

STATE of Arizona ex rel. the Attorney General, Gary K. NELSON, Petitioner,

v.

Jewel W. JORDAN, Respondent.

No. 9480.

Supreme Court of Arizona.

In Banc.

Dec. 31, 1968.

Gary K. Nelson, Atty. Gen., for petitioner.

R. G. Langmade, Phoenix, for respondent.

McFARLAND, Chief Justice:

The State of Arizona, upon the relation of Gary K. Nelson, The Attorney General, brings this original action in quo warranto, asking that this Court adjudge the respond-

ent Jewel W. Jordan not entitled to hold or enjoy the office of State Auditor, and that a judgment of ouster be entered against her.

The Twenty-first Legislature in 1968 adopted House Concurrent Resolution 1, and Senate Concurrent Resolution 6 each proposing to amend the Arizona Constitution, and reading respectively as follows:

### "HOUSE CONCURRENT RESOLUTION 1

### "A CONCURRENT RESOLUTION

PROPOSING AN AMENDMENT OF THE CONSTITUTION OF ARIZONA ABOLISHING THE OFFICE OF STATE AUDITOR, AND AMENDING SECTIONS 1, 6 AND 9 OF ARTICLE 5, CONSTITUTION OF ARIZONA.

"Be it resolved by the House of Representatives of the State of Arizona, the Senate concurring:

"1. The following amendments of sections 1, 6 and 9 of article 5, Constitution of Arizona, are proposed, to become valid when approved by a majority of the qualified electors voting thereon and upon proclamation of the governor:

"Section 1. The Executive Department shall consist of Governor, Secretary of State, State Treasurer, Attorney General, and Superintendent of Public Instruction, each of whom shall hold his office for two years beginning on the first Monday of January next after his election.

"The persons, respectively, having the highest number of votes cast for the office voted for shall be elected, but if two or more persons shall have an equal and the highest number of votes for any one of said offices, the two Houses of the Legislature at its next regular session shall election forthwith, by joint ballot, one of such persons for said office.

"The officers of the Executive Department during their terms of office shall reside at the seat of government where they shall keep their offices and the public records, books, and papers. They shall perform such duties as are prescribed by the Constitution and as may be provided by law.

"Section 6. In the event of the death of the Governor, or his resignation, removal from office, or permanent disability to discharge the duties of the office, the Secretary of State, if holding by election, shall succeed to the office of Governor until his successor shall be elected and shall qualify. If the Secretary of State be holding otherwise than by election, or shall fail to qualify as Governor, the Attorney General, the State Treasurer, or the Superintendent of Public Instruction, if holding by election, shall, in the order named, succeed to the office of Governor. The taking of the oath of office as Governor by any person specified in this section shall constitute resignation from the office by virtue of the holding of which he qualifies as Governor. Any successor to the office shall become Governor in fact and entitled to all of the emoluments, powers and duties of Governor upon taking the oath of office.

"In the event of the impeachment of the Governor, his absence from the State, or other temporary disability to discharge the duties of the office, the powers and duties of the office of Governor shall devolve upon the same person as in case of vacancy, but only until the disability ceases.

"Section 9. The powers and duties of Secretary of State, State Treasurer, Attorney-General, and Superintendent of Public Instruction shall be as prescribed by law.

"2. The proposed amendments (approved by a majority of the members elected to each house of the legislature, and entered upon the respective journals thereof, together with the ayes and nays thereon) shall be by the secretary of state submitted to the qualified electors at the next regular general election (or at a special election called for that purpose), as provided by article 21, Constitution of Arizona.

"Passed the House February 26, 1968 by the following vote: 31 Ayes, 22 Nays, 7 Not Voting.

"Passed the Senate March 12, 1968 by the following vote: 17 Ayes, 12 Nays, 1 Not Voting.

"Approved by the Governor—March 13, 1968

"Filed in the Office of the Secretary of State—March 13, 1968

## "SENATE CONCURRENT RESOLUTION 6

## "A CONCURRENT RESOLUTION

"PROPOSING AN AMENDMENT OF THE CONSTITUTION OF ARIZONA RELATING TO THE EXECUTIVE DE-PARMENT; PROVIDING FOR FOUR YEAR TERMS FOR THE GOVERNOR, SECRETARY OF STATE, STATE AUDITOR, STATE TREASURER, AT-TORNEY GENERAL AND SUPERIN-TENDENT OF PUBLIC INSTRUC-TION, AND AMENDING ARTICLE 5, SECTION 1, CONSTITUTION OF ARIZONA.

"Be it resolved by the Senate of the State of Arizona, the House of Representatives concurring:

"1. The following amendment of article 5, section 1, Constitution of Arizona, is proposed, to become valid when approved by a majority of the qualified electors voting thereon and upon proclamation of the governor:

 Section 1. *Executive department; state officers; terms; election; residence and office at seat of government; duties*

"Section 1. The Executive Department shall consist of Governor, Secretary of State, State Auditor, State Treasurer, At-torney General, and Superintendent of Public Instruction, each of whom shall hold his office for four years beginning on

the first Monday of January, 1971 next after the regular general election in 1970. "The persons, respectively, having the high-est number of votes cast for the office voted for shall be elected, but if two or more persons shall have an equal and the highest number of votes for any one of said offices, the two Houses of the Legis-lature at its next regular session shall elect forthwith, by joint ballot, one of such per-sons for said office.

"The officers of the Executive Department during their terms of office shall reside at the seat of government where they shall keep their offices and the public records, books, and papers. They shall perform such duties as are prescribed by the Constitution and as may be provided by law.

"2. The proposed amendment (approved by a majority of the members elected to each house of the legislature, and entered upon the respective journals thereof, to-gether with the ayes and nays thereon) shall be by the secretary of state submitted to the qualified electors at the next regular general election (or at a special election called for that purpose), as provided by article 21, Constitution of Arizona.

"Passed the House March 21, 1968 by the following vote: 33 Ayes, 16 Nays, 11 Not Voting.

"Passed the Senate March 21, 1968 by the following vote: 16 Ayes, 11 Nays, 3 Not Voting.

"Filed in the Office of the Secretary of State—March 21, 1968"

Thereafter the full texts of the resolu-tions were printed in the official publicity pamphlet in conformity with A.R.S. § 19-123.

Both resolutions were submitted to the electors at the general election of November 5, 1968, the Senate Resolution appearing on the ballot as Proposition 104 and the House Resolution as Proposition 108. According to the official canvass both resolutions were carried by a majority of the votes cast, but

Proposition 104 received 266,035 affirmative votes to 129,991 negative, and Proposition 108 received 206,432 affirmative, 171,474 negative. On December 4, 1968, the Governor issued a proclamation declaring both amendments to be law.

The propositions appeared on the ballot in the following form:

### REFERENDUM ORDERED BY PETITION BY THE PEOPLE
### HOUSE CONCURRENT RESOLUTION 1
### A CONCURRENT RESOLUTION

PROPOSING AN AMENDMENT OF THE CONSTITUTION OF ARIZONA ABOLISHING THE OFFICE OF STATE AUDITOR, AND AMENDING SECTIONS 1, 6 AND 9 OF ARTICLE 5, CONSTITUTION OF ARIZONA.

#### (SUMMARY)

Amending Sections 1, 6 and 9 of Article 5 of the Constitution of Arizona, thereby abolishing the office of the State Auditor.

---

If you favor the above law, vote YES; if opposed, vote NO.

---

108

NO ☐

YES ☐

---

### REFERENDUM ORDERED BY PETITION OF THE PEOPLE
### SENATE CONCURRENT RESOLUTION 6
### A CONCURRENT RESOLUTION

PROPOSING AN AMENDMENT OF THE CONSTITUTION OF ARIZONA RELATING TO THE EXECUTIVE DEPARTMENT; PROVIDING FOR FOUR YEAR TERMS FOR THE GOVERNOR, SECRETARY OF STATE, STATE AUDITOR, STATE TREASURER, ATTORNEY GENERAL AND SUPERINTENDENT OF PUBLIC INSTRUCTION, AND AMENDING ARTICLE 5, SECTION 1, CONSTITUTION OF ARIZONA.

#### (SUMMARY)

Amending Section 1 of Article 5 of the Constitution of Arizona by changing from two years to four years the terms of the Governor, Secretary of State, State Auditor, State Treasurer, Attorney General and Superintendent of Public Instruction, beginning January, 1971.

---

If you favor the above law, vote YES; if opposed, vote NO.

---

104

YES ☐

NO ☐

---

The Attorney General of the State, in the application for a Writ of Quo Warranto, claims that both of the amendments are effective, that the office of the State Auditor has been abolished, and that upon the proclamation of the Governor the office no longer exists. The respondent Auditor on the other hand maintains that

Proposition 104 specifically provides that the State Auditor shall be a part of the Executive Department with a term of office for four years after the first Monday in January 1971 while Proposition 108 eliminated the State Auditor from the Executive Department, and provided that the officer should hold office for two years, effective on the first Monday of January next after the election, and therefore are in conflict.

Article 21, Arizona Constitution, A.R.S., sets forth the mode of amending the Constitution. It reads as follows:

## "ARTICLE XXI

## "MODE OF AMENDING

"Sec.

1. Introduction in legislature; initiative petition; election.
2. Convention.

"§ 1. Introduction in legislature; initiative petition; election

"Section 1. Any amendment or amendments to this Constitution may be proposed in either House of the Legislature, or by Initiative Petition signed by a number of qualified electors equal to fifteen per centum of the total number of votes for all candidates for Governor at the last preceding general election.

"Any proposed amendment or amendments which shall be introduced in either House of the Legislature, and which shall be approved by a majority of the members elected to each of the two Houses, shall be entered on the journal of each House, together with the ayes and nays thereon. *When any proposed amendment or amendments shall be thus passed by a majority of each House of the Legislature and entered on the respective journals thereof,* or when any elector or electors shall file with the Secretary of State any proposed amendment or amendments together with a petition therefor signed by a number of

electors equal to fifteen per centum of the total number of votes for all candidates for Governor in the last preceding general election, *the Secretary of State shall submit such proposed amendment or amendments to the vote of the people at the next general election* (except when the Legislature shall call a special election for the purpose of having said proposed amendment or amendments voted upon, in which case the Secretary of State shall submit such proposed amendment or amendments to the qualified electors at said special election,) *and if a majority of the qualified electors voting thereon shall approve and ratify such proposed amendment or amendments in said regular or special election, such amendment or amendments shall become a part of this Constitution.* Until a method of publicity is otherwise provided by law, the Secretary of State shall have such proposed amendment or amendments published for a period of at least ninety days previous to the date of said election in at least one newspaper in every county of the State in which a newspaper shall be published, in such manner as may be prescribed by law. *If more than one proposed amendment shall be submitted at any election, such proposed amendments shall be submitted in such manner that the electors may vote for or against such proposed amendments separately."* [Emphasis added.]

In the instant case we are not concerned with Section 2 of Article XXI which provides for amendments by Constitutional Convention.

■ The last sentence quoted above has been interpreted by our Court in the case of Kerby v. Luhrs, 44 Ariz. 208, 36 P.2d 549, 94 A.L.R. 1502. Therein citing State ex rel. Hudd v. Timme, 54 Wis. 318, 11 N.W. 785, this Court approved the general rule construing such a provision to mean that amendments which had different objects and purposes in view must be submitted separately, and that in order to

constitute more than one amendment, the proposition submitted must relate to more than one subject and have at least two distinct and separate purposes not dependent upon or connected with each other. In other words, if the changes in the proposed amendment

" * * * cover matters necessary to be dealt with in some manner, in order that the Constitution, as amended, shall constitute a consistent and workable whole on the general topic embraced in that part which is amended, and if, logically speaking, they should stand or fall as a whole, then there is but one amendment submitted. But, if any one of the propositions, although not directly contradicting the others does not refer to such matters, or if it is not such that the voter supporting it would reasonably be expected to support the principle of the others, then there are in reality two or more amendments to be submitted, and the proposed amendment falls within the constitutional prohibition." Kerby v. Luhrs, supra, at 221, 36 P.2d at 554.

It is obvious that the Legislature was mindful of this requirement, that each amendment having a different object or purpose, must be submitted separately. Hence, although the two amendments applied to but one section of the Constitution, they were submitted as separate propositions.

Nowhere in Article 21, which gives in detail the method of amending the Constitution, is there a suggestion of the form which the amendment shall take (with the exception of the requirement that if more than one proposed amendment is submitted, each amendment must be submitted separately so that the electors may vote for or against each one separately).

It may be noted that Article 21 provides a method of publicity of proposed amendments to be followed until otherwise provided by law. The Legislature has made such provision in A.R.S. § 19–123. This provides for publishing of a publicity pamphlet which shall contain:

"1. A true copy of the title and text of the measure or proposed amendment.

"2. The form in which the measure or proposed amendment will appear on the ballot, the official title, the descriptive title prepared by the secretary of state, and the number by which it will be designated.

"3. The arguments for and against the measure or amendment."

In the present instance the Secretary of State published the publicity pamphlet in the form required by the statute.

It will be noted that under Article IV, Part 2, of the Constitution dealing with the Legislature, there are detailed provisions regarding the procedure to be followed in enacting statutes. Two of these read as follows:

"§ 13. Every Act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be embraced in the title.

"§ 14. No Act or section thereof shall be revised or amended by mere reference to the title of such Act, *but the Act or section as amended shall be set forth and published at full length.*" [Emphasis added.]

An examination of several concurrent resolutions of the Legislature proposing other amendments to the Constitution in past years shows that the same format as followed in the present instance has been used. That is, after the title, the resolution is

"Be it resolved by the Senate (or House of Representatives) of the State of Arizona, the House of Representatives (or Senate) concurring: (1) The following

amendment of Article 5, Section 1, Constitution of Arizona, is proposed, to become valid when approved by a majority of the qualified electors voting thereon and upon proclamation of the Governor."

The text of the section follows in haec verba reading as the section would read if amended as proposed.

█ It would appear that the Legislature may have used this form because of its familiarity with the requirement of Section 14 of Article IV, Part 2, Arizona Constitution, that the act or section to be amended must be set forth at full length, and that it cannot be revised or amended by mere reference to the title of such act. It is obvious, however, that this requirement goes only to acts or statutes which can be passed by the Legislature, and does not refer to proposed amendments to the Constitution which must be referred to the people for final passage.

Although the immediate question of whether two proposed amendments are in conflict has never been raised in this State, there are at least two other States having similar constitutional provisions which have spoken upon the subject.

The same question was raised in the State of Idaho in the case of McBee v. Brady, 15 Idaho 761, 100 P. 97. The Legislature by Joint Resolution No. 10 attempted to amend a Section 6 of the Constitution by adding thereto the word "Assessor" among the names of the officers who were empowered to appoint deputies and clerical assistants by the Board of County Commissioners. Joint Resolution No. 3. referring to the same Section 6 proposed to amend it by the omission of the words "Probate Judge" while the words "Probate Judge" were allowed to remain in Section 6 under Resolution No. 10. Thus the first amendment (Resolution No. 10) contains Section 6 with the words "Probate Judge" out, and the word "Assessor" out while the second amendment (Resolution No. 3) contains the section with the words "Probate Judge" in and the word "Assessor" in.

The Idaho Court held that it was impossible to reconcile the two amendments, and therefore impossible to determine which of the two amended sections should stand as a part of the Constitution.

The Idaho Court, in discussing the conflict in the two proposed amendments under Resolution 10 and Resolution 3, stated:

"* * * The conflict in these two sections arises out of the method adopted and pursued by the Legislature in amending the same section and article, the same time. In other words, it is impossible to amend the same section *if the section as a whole is proposed as the amendment in two different respects at the same time. The conflict will always occur.* Referring again to the suggestions heretofore made as to the method of proposing and adopting amendments to the Constitution, we think the better course is that the proposition to amend refers to the particular matter of which the amendment consists, in which case no conflict need necessarily arise." McBee v. Brady, supra, at 105. [Emphasis added.]

The Legislature in Idaho in its joint resolution provided that the section to be amended should "be amended to read as follows:" setting it out in haec verba.

McBee cites the leading case of Gabbert, Administrator v. Chicago, R. I. & P. Ry. Co., 171 Mo. 84, 70 S.W. 891. There the court had a similar problem in that the Legislature submitted to the people two proposed constitutional amendments which were to amend the same section of the Constitution. The two amendments did embrace separate propositions, and the Constitution of Missouri having a similar provision that "proposed amendments shall be submitted to a vote of the people, each amendment separately," Const. art. 15, § 2, the Legislature did so submit them. The

Missouri statute, Rev.Stat.1899, § 7122, providing for publicity, required that the Secretary of State certify the form of the ballot to the various county clerks "indicating the character and nature of the proposed amendments." The court, in its opinion, sets forth the manner in which they were submitted:

" 'Seventh Constitutional Amendment. Providing that, in courts not of record, two-thirds of the jury may render a verdict in civil cases; in courts of record, three-fourths of the jury.

" 'Sixth Constitutional Amendment. Providing that no grand jury shall be convened, except upon order of judge of court having power to try and determine felonies, but, when so assembled, may indict for any crime.'

*"As thus submitted on the ballots, and as set out in the resolutions,* these two constitutional amendments are perfectly consistent, and the ballots were in no sense misleading; but it is urged with great earnestness by defendant, in a brief by an amicus curiae, that the sixth amendment defeats the seventh. The argument is based upon the fact that the resolutions themselves, after setting out specifically the words which it is proposed to add to said section 28 of article 2, and which in fact constitute the amendment in each case, proceed to say, 'So that said section of the constitution when amended shall read as follows.' * * * " Gabbert v. Ry. Co., supra, at 892 [Emphasis added.]

Thus, the Missouri Court held that the amendments in this instance were entirely consistent, each relating to a distinct subject, and that the fact that the Legislature *after setting forth the nature of the amendment,* had added the words "so that said section of the constitution when amended shall read as follows," and had set forth the section as it was proposed to read in haec verba, had no effect, since it was not required by the Constitution, and the Legislature had already indicated clearly the nature of each amendment, which was not in conflict with the other.

In the instant case we find that although the Legislature did not state "§ 1 of Article 5 of the Constitution of Arizona *shall read as follows"* the language used, i. e., "the following amendment of Article 5, § 1, Constitution of Arizona is proposed" can only have one meaning to the voter—that the text which follows must be read in full, without adding or subtracting any other words, and constitutes the proposed amendment which will become that section of the Constitution if adopted. In addition, Senate Concurrent Resolution 6 sets forth in the title that the four-year terms are for the "Governor, Secretary of State, *State Auditor,* State Treasurer, Attorney General and Superintendent of Public Instruction," [Emphasis added], and this title is used as the text which was set forth on the ballot as indicating what the proposed amendment was.

In the body of the section thus set out, in Proposition 104 the language is:

"The Executive Department shall consist of Governor, Secretary of State, *State Auditor,* State Treasurer, Attorney General and Superintendent of Public Instruction *each of whom shall hold his office for four years* beginning on the first Monday of January, 1971 next after the regular general election in 1970." [Emphasis added.]

Proposition 108 in the title states the nature of the amendment as "Proposing an amendment of the Constitution of State of Arizona abolishing the office of State Auditor, * * * " However, in the body of the House Concurrent Resolution 1, Section 1, describing the Executive Department, it is stated that it

" * * * shall consist of Governor, Secretary of State, State Treasurer, Attorney General and Superintendent of Public Instruction, *each of whom shall hold his office for two years* beginning

on the first Monday of January next after his election." [Emphasis added.]

The similar language in each of the proposed amendments, i. e., "The following amendment of Article 5, Section 1, Constitution of Arizona, is proposed," certainly has the effect of informing the voters that the entire text is the amendment to the Constitution. Obviously, when in the same section under one Concurrent Resolution, the State Auditor is included as part of the Executive Department, and in the other section the State Auditor is omitted, and in one section the terms of office for the Executive Department are set at four years and at two years by two separate resolutions, it cannot be doubted that they are in conflict. Not only does a conflict exist, but the form in which the amendments were submitted could only be confusing to the electors.

We call attention to the fact that, since Proposition 104 provided that the State Auditor be elected for a term of office of four years, a large number of the voters may have been voting for Proposition 108 for the purpose of keeping the terms of office at two years. This Court is unable to say what percent voted for Proposition 108 for this reason, and what percent may have voted for it because it eliminated the Auditor's office. We are not permitted to enter into such conjecture. The problem becomes even more complex when one considers that 275,964 of the electors voted for the respondent to succeed herself in the very office alleged to have been abolished.

█ Courts in other jurisdictions, when faced with a similar situation, have held that the result of such a conflict is that both amendments must fall. In re Senate File 31, 25 Neb. 864, 41 N.W. 981; McBee v. Brady, 15 Idaho 761, 100 P. 97; Opinion to the Governor, 78 R.I. 144, 80 A.2d 165; 16 Am.Jur.2d 248; Cooley's Constitutional Limitations, p. 130 (8th ed.). This Court is not faced with such a harsh result by virtue of Article IV, Part 1, Sec. 1, Para. 12, of

the Constitution of Arizona which, in clear and unmistakable terms, provides the solution to this matter:

"If two or more conflicting measures or amendments to the Constitution shall be approved by the people at the same election, the measure or amendment receiving the greatest number of affirmative votes shall prevail in all particulars as to which there is conflict."

But The Attorney General urges upon us the rule that both amendments

" * * * must be construed together and effect given to both. Differences, if there are any, must, if possible, be reconciled." Cooley's Constitutional Limitations, pp. 129–130 (8th ed.)

He maintains that reconciliation can be effected by looking to the legislative intent as expressed in the minutes of the Legislature, and the publicity pamphlet. Such extrinsic evidences of legislative intent, although entitled to some weight, are not controlling, particularly where, as here, each amendment is clear on its face and capable of only one interpretation. Ward v. Stevens, 86 Ariz. 222, 344 P.2d 491; Adams v. Bolin, 74 Ariz. 269, 247 P.2d 617, 33 A.L.R.2d 1102; McCurtain County Excise Bd. v. St. Louis-San Francisco Ry. Co., Okl., 340 P.2d 213: See also Cooley, supra, at page 143. Furthermore, if resort to rules of construction were required here, the intent of the people who adopted the amendments would be controlling. County of Apache v. Southwest Lumber Mills, Inc., 92 Ariz. 323, 376 P.2d 854; Cooley, supra, at pp. 124–127. If this Court were to ignore the plain language of each amendment, wherein the intent of the people is to be first found—Hines v. Winters, Okl., 320 P.2d 1114; Monaghan v. School District No. 1 Clackamas County, 211 Or. 360, 315 P.2d 797—and attempt to discover a different intent of the electors, it would be faced with an insurmountable task. As previously pointed out, it would be mere conjecture. The courts in McBee v. Brady,

supra, and Opinion to the Governor, supra, acknowledged the impossibility of divining their intent.

The court, in McBee, supra, 100 P. at 105, in discussing this subject, stated:

"It is next urged by counsel for defendant that section 6, art. 18, included as a part of said proposed amendment, is in conflict with the same section and article covered by a proposed amendment thereto by joint resolution No. 10 passed by the Legislature at the same session, and submitted and voted upon by the electors of the state at the same election and by them adopted. Sess.Laws 1907, p. 585. Section 6 as amended by the amendment submitted by joint resolution 3 changed such section by omitting therefrom the words 'probate judge.' The amendment submitted under joint resolution No. 10 amended said section by adding thereto the word 'assessor' among the names of the officers who were empowered to appoint deputies and clerical assistants by the board of county commissioners. Resolution No. 3 submitted section 6, amended by the omission of the words 'probate judge,' as the amendment; while resolution No. 10 submitted section 6 with the words 'probate judge' therein, and also the word 'assessor' added as the amendment. Thus the first amendment contains the section with the words 'probate judge' out and the word 'assessor' out, while the second amendment contains the section with the words 'probate judge' in, and the word 'assessor' in. Both of these amendments were submitted and voted upon at the same election, and both adopted. Thus, we have section 6, art. 18, amended by omitting the words 'probate judge' therefrom, and no mention made of the office of assessor as an officer who should have deputy or clerical assistance; and also by retaining the words 'probate judge,' and also inserting the word 'assessor' as an officer who might be authorized to appoint deputies. The provisions of the section thus amended are directly in conflict, and, taking the section as a whole as the amended section, *it is impossible to determine which of these two amended sections should stand as a part of the Constitution of this state. It is impossible to reconcile the two amendments,* * * *" [Emphasis added.]

In Barnett v. Case, 285 Mich. 494, 281 N.W. 12, the court refused to force a resolution to the ballot since it contained inconsistent and repugnant provisions,

"* * * and it is impossible by the application of any known rules of construction to determine which proposition was intended to be submitted. * * * To also print upon the ballot the question as framed by the legislature to be voted upon could lead to nothing but confusion, not only for the voter in casting his ballot, but the result of the election would be placed in the realm of conjecture."

Another even more important case is that of State ex rel. Greenlund v. Fulton, 99 Ohio St. 168, 124 N.E. 172, where there had been presented to the vote of the people an amendment providing that in raising revenues for all state and local purposes the subjects of taxation should be classified and the rate of taxation shall be uniform on all subjects of the same class, with certain exceptions. The vote upon this proposal was "yes" 336,616, and "no" 304,399. At the same election there was also submitted to the electors of the state for approval another amendment which provided that laws should be passed taxing by a uniform rule all monies, credits, investments, and bonds, with certain exceptions. This measure received a vote of "yes" 479,420, and "no" 371,176. It was contended that the latter should become law because of a similar amendment to the constitution providing that if two conflicting measures are submitted the one receiving the higher vote shall become the law. The court, in passing upon this proposition, said:

"There is no possible misunderstanding of these provisions. The Constitution re-

quires that every voter shall have laid before him, in as complete and effective a manner as 'may be reasonably possible,' the proposal upon which he is to vote.

"In this case the petition by the electors, and the copy mailed and distributed to the electors, all contained the entire proposed section 2, art. 12, with the changes at the proper place.

"As above stated, it is admitted that the provisions of the 'Classification Amendment,' requiring that the General Assembly shall classify all subjects of taxation, is in direct conflict with the provisions of original section 2, art. 12, which provide for the taxation of all property by uniform rule at its true value in money; and having received fewer votes than the uniform rule section, it cannot be held to have carried." State ex rel. Greenlund v. Fulton, supra, at 176

The Attorney General relies upon the case of Gabbert, Administrator v. C. R. I. & P. Ry. Co., supra, as supporting his position. As we previously pointed out, Gabbert set forth two separate amendments which were not in conflict. In State v. Fulton, supra, the words of the court clearly show that Gabbert does not support The Attorney General's position.

"The case of Gabbert, Adm'r v. C. R. I. & P. Ry. Co., 171 Mo. 84, 70 S.W. 891, is relied on. In that case two amendments were proposed by the General Assembly to be voted upon by the people at the same election, and both were adopted. Both were amendments to section 28, art. 2, of the Constitution. One provided that the section should be amended by adding at a certain designated place a provision for a two-thirds verdict of a jury in civil cases not in courts of record, and a three-fourths verdict in courts of record. The other provided that at a certain other designated place a proviso should be inserted making the convening of the grand jury subject to the discretion of the court.

"There was no contention that the two amendments were incongruous, or contradictory or irreconcilable, and the court, at page 95 of 171 Mo., at page 893 of 70 S.W. say:

" 'Every voter, moreover, knew that if he voted for both amendments he was voting to add both to the section, and if adopted each would be added in its proposed place to the section, and the section and its amendments would then constitute a harmonious section.'

"There was not in the case a single word rejected which was included in either of the proposals. It was simply found that the language in both of the proposals together constituted one harmonious whole.

"But in this case it is proposed to reject from the proposal of the General Assembly the larger part of it, including the entire portion thereof which provides for the uniform taxation of property, and to inject into it the provisions of the initiated or classification amendment, although the former received 140,000 more votes of the electorate than the latter." State ex rel. Greenlund v. Fulton, supra, 124 N.E. at 176

In order to obtain the result sought by The Attorney General the Court would be required to select the provision relating to four-year terms from Proposition 104, insert it in place of the two-year term in Proposition 108, and then reject the entire remainder of Proposition 104. Such picking and choosing of phrases is judicial legislation of the worst sort. The Supreme Court of Ohio rejected a similar suggestion in State ex rel. Greenlund v. Fulton, supra, at 177, stating:

" * * * Where is the authority of a court to add to, or subtract from, a solemn document prepared and filed pursuant to explicit terms of the Constitution for the purpose of altering the charter of the people's government? We cannot believe that the fundamental law

can be taken apart, built up, amended, or dealt with, in that manner."

This Court is of the opinion that for it to so flagrantly enter the field of legislation as urged upon us by The Attorney General would be to set a precedent with far more ominous after-effects than the striking down of a conflicting amendment in the manner provided for by our Arizona Constitution. It is obvious that the provisions of Proposition 104 and Proposition 108 are in complete and irreconcilable conflict.

There are several ways in which the Legislature might have proposed these amendments without involving such conflict, none of which were followed.

 It is not necessary to discuss the effect of Chapter 89 of the 1968 Arizona Session Laws, since such Chapter, by its own terms, does not become effective " * * until the Constitution of Arizona is amended by vote of the people abolishing the office of state auditor," nor could it be given effect independent of such an amendment. Hudson v. Kelly, 76 Ariz. 255, 263 P.2d 362. We therefore hold that since Proposition 104 received the larger number of votes it became the law; that Proposition 108 has not been adopted, and did not become a part of the Constitution of Arizona.

It is the judgment of this Court that the respondent, Jewel W. Jordan, now legally holds office as State Auditor, and, a certificate of election having been issued to her by the Secretary of State certifying her election as State Auditor on November 5, 1968, is entitled to continue to hold such office for a two-year term, commencing the first Monday in January 1969.

BERNSTEIN and LOCKWOOD, JJ., concur.

STRUCKMEYER, Justice, and UDALL, Vice Chief Justice (dissenting).

This action in quo warranto can and should be resolved by the simple and usual principles customarily applied to constitutional interpretations. Because it has not been so resolved we are compelled to dissent.

The two proposed constitutional amendments passed by affirmative vote at the general election of November 5, 1968, relate to Art. V, § 1 of the Constitution of Arizona. In their relevant parts, they are:

"Proposition # 104

"Section 1. The Executive Department shall consist of Governor, Secretary of State, State Auditor, State Treasurer, Attorney General, and Superintendent of Public Instruction, each of whom shall hold his office for four years beginning on the first Monday of January, 1971 next after the regular general election in 1970."

and Proposition # 108:

"Section 1. The Executive Department shall consist of Governor, Secretary of State, State Treasurer, Attorney General, and Superintendent of Public Instruction, each of whom shall hold his office for two years beginning on the first Monday of January next after his election."

The majority of this court conclude from a comparison of the two propositions that they conflict. This is because Proposition # 104 includes the State Auditor as an office of the Executive Department and Proposition # 108 excludes that office. However, this seeming conflict disappears when the two propositions are compared with Art. V, § 1 as it was prior to November 5, 1968, and the relevant law is applied in the light of the language used.

Since statehood in 1912, and until the general election of November 5, 1968, the Constitution of the State of Arizona Art. V, § 1, paragraph 1 has provided:

"Section 1. The Executive Department shall consist of Governor, Secretary of State, State Auditor, State Treasurer, Attorney General, and Superintendent of Public Instruction, each of whom shall hold his office for two years beginning

on the first Monday of January next after his election."

It will be immediately noticed that while Art. V, § 1 consists of one sentence, structurally it has two distinct clauses, hence it is divisible into two severable parts. The first clause, by the language "The Executive Department shall consist of the Governor, Secretary of State, State Auditor, State Treasurer, Attorney General, and Superintendent of Public Instruction," established the enumerated offices as constitutional offices. The second clause, by the language, "each of whom shall hold his office for two years beginning on the first Monday of January next after his election," established their terms of office.

Proposition # 104 purports to change the existing Art. V, § 1 only in its second clause; that is, that the terms of the offices shall be for four years after the first Monday of January, 1971, instead of two years as was formerly. Proposition # 108 purports to change Art. V, § 1 only as to the first clause in that it deletes the office of State Auditor as a constitutional office, thereby abolishing that office. It is abundantly clear that the purpose in submitting the two proposed amendments in this manner was to permit the people to decide each proposal separately vis-a-vis whether the terms of the executive department would be increased to four years and whether the office of the State Auditor would be abolished.

The propositions as submitted to the electorate conform to the holding of this court in Kerby v. Luhrs, 44 Ariz. 208 at p. 221, 36 P.2d 549:

"* * * if any one of the propositions, * * * is not such that the voter supporting it would reasonably be expected to support the principle of the others, then there are in reality two or more amendments to be submitted, * * *."

The legislature, in submitting two propositions, avoided what is commonly known as "logrolling." Either the first or the second clauses of Art. V, § 1 could be changed or both or no change at all could be made but if the amendments were incorporated into one, the voters would have had no choice but to either accept or reject both of the proposed changes. The legislative objective is laudable and commendable. It should not be permitted to thwart the majority wishes of the voters in the democratic state of Arizona, rather every effort should be made to find the purposes of the amendments and apply them as written.

It is, of course, the prime aim of constitutional construction to arrive at the apparent purpose of an enactment. We said, for example, in construing another article of the Arizona Constitution:

"* * * there are two of the canons of constitutional construction which seem peculiarly applicable. The first and most important one is that the construction should be such as to accomplish the apparent purpose of the provision. * * *" Porter v. Hall, 34 Ariz. 308, 321, 271 P. 411, 415.

The purpose should be determined from a reasonable and fair interpretation of the language used. See e. g. In re Morris' Estate, 56 Cal.App.2d 715, 133 P.2d 452; Wolfson v. Avery, 6 Ill.2d 78, 126 N.E.2d 701; Lincoln v. Secretary of Commonwealth, 326 Mass. 313, 93 N.E.2d 744; In re Fay, 291 N.Y. 198, 52 N.E.2d 97.

This is everywhere the approved mode of constitutional construction and bears repeating. *The court seeks to determine the purpose of the constitutional enactment and in arriving at the purpose looks to the language used.*

A close scrutiny of the language used in the propositions and a comparison with the language of Art. V, § 1 as it existed before amendment makes the purposes of the two propositions clear and obvious. *Each was designed to permit the electorate to accept or reject one change only.* It is wholly unreasonable to assume from a superficial examination of the two propositions, as the majority do, that the pur-

pose of one was to cancel the other if both passed by affirmative votes; that is to say, that the two-year term in Proposition 108 was to cancel the four-year term in Proposition 104.

The majority treat but lightly the principle that constitutional provisions only are in conflict when they relate to the same subject, are adopted for the same purposes, and cannot be enforced without creating conflicts.

> "Distinct provisions of the constitution are repugnant to each other only when they relate to the same subject, are adopted for the same purposes, and can not be enforced without material and substantial conflict." Meyers v. Flournoy, 209 La. 812, 25 So.2d 601, 603.

When the two proposed amendments are read in the light of the divisible and severable nature of the two clauses found in Article V, Section 1, it is plain that they do not relate to the same subject. The subject of Proposition 104 relates to the second clause of Article V, Section 1— that part providing for the terms of office. The subject of Proposition 108 relates to the first clause—that part enumerating the offices.

Neither do they have the same purposes. Purpose means the effect or result aimed at. Webster's Third New International Dictionary Unabridged. The result aimed at by each of the proposed amendments is distinct and dissimilar. Each seeks to change the Constitution in a single different respect. Moreover, each can be enforced without creating a conflict simply by giving to each the meaning attributable to the purposes found in the language used.

It is also an accepted principle that one part of a Constitution is not to be allowed to effect another, if by any reasonable construction the two can be made to stand together. McBride v. Kerby, 32 Ariz. 515, 521, 260 P. 435. An interpretation which is reasonable and consistent with common sense should be applied and "A construction which will result in an absurdity should be avoided." McBride v. Kerby, supra. Under the majority's interpretation, Proposition 108 is wholly ineffective and nugatory and the will of the majority of those voting is defeated, whereas by the construction which we believe proper, a reasonable and sensible interpretation is accorded which gives effect to both amendments.

For the foregoing reasons we dissent.